Gary L. REED, Petitioner-Appellee,

v.

John W. TURNER, Warden, Utah State Prison, Respondent-Appellant.

No. 516–70.

United States Court of Appeals, Tenth Circuit.

June 7, 1971.

John D. Ward, Denver, Colo., for petitioner-appellee.

Vernon B. Romney, Atty. Gen., of Utah (Lauren N. Beasley, Chief Asst. Atty. Gen., on the brief), for respondent-appellant.

Before SETH, McWILLIAMS, and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The State of Utah here seeks reversal of a judgment of the District Court releasing from custody the appellee, Gary L. Reed, pursuant to a habeas corpus petition brought pursuant to 28 U.S.C. § 2254. The court found that the confession of the accused was given without adequate warnings and, further, that the subsequent plea of guilty was involuntarily entered—that it was induced by the promises of the arresting and sheriff's officers.

The petitioner was arrested on June 11, 1966, on a robbery charge in Salt Lake City, Utah. At the time of arrest he was warned by the arresting officer (Salt Lake City deputy sheriff) that he had a right to remain silent; that he had a right to counsel; and that he did not have to say anything unless counsel was present.[1]

After being taken to the Salt Lake County Jail (having been charged with vagrancy), petitioner was interrogated by the arresting officers. Petitioner testified to the conversation on this occasion as follows:

"* * * they said, 'Did you commit this robbery,' or something to that effect. And I believe I told them, 'Well, yes. You got the money ain't you?' And they said, 'Is this your first charge? Is this the first time you have been in trouble?' And I said, 'Yes.' And they said, 'If this is the first time you have been in trouble you will probably get probation if you will cooperate with the courts.'

Then they told us to write a statement. So I wrote a statement. * * *"

Afterwards, two officers from the Utah County Sheriff's office transported petitioner and his two suspected accomplices to the Utah County Jail. Petitioner testified that he asked these officers what would happen and that Deputy Holley said, "The easiest way was the best way." Petitioner's testimony continued,

They told us the same thing that the Salt Lake Police did, that if we went along, that we stood a good chance of getting probation because I didn't have nothing else on my record.

At the state habeas corpus hearing petitioner's testimony was somewhat stronger. He testified that Sheriff Chapple "kept telling us if we went along with the courts and didn't give them no trouble and cooperated with them that we *will* get probation." (Emphasis added.)

Sheriff Chapple, on the other hand, testified at the state habeas corpus hearing as follows:

A It seemed to me that when we were coming out of Salt Lake Mr. Reed asked us what he should do. And it seems like Mr. Holley told him, that it would be entirely up to him. And he said, "Well, I am guilty." And Mr. Holley told him, "Well, then, the best thing to do is to plead guilty, if you are guilty. If you are not guilty, plead not guilty."

Now, I don't remember the exact words, but there was something like that carried on.

But I don't recall any promises being made. * * *

Q You don't recall anyone saying that if you do cooperate things will go easier for you, or implying this?

A Well, it seemed like to me in the conversation that the easiest way is the best way, or something like that. I don't recall.

---

1. Petitioner denied at the habeas corpus hearing that he was warned that he had a right to have counsel.

Petitioner signed another, more detailed confession upon arrival at the Utah County Jail.

On June 14, 1966, petitioner appeared before the State District Court for arraignment. He was advised of his right to counsel and that if he did not have funds one would be appointed for him. Petitioner and his co-defendant explicitly stated that they did not wish counsel; both pleaded guilty to the crime of robbery. Both defendants stated that no promises or threats had been made to them, and both described the details of the crime in open court.

Petitioner's testimony in both state and federal habeas corpus hearings was to the effect that he would not have waived counsel nor would he have pleaded guilty, had it not been for the prior confessions (which he now attacks as having been coerced) and the alleged promises made to him that he would receive or had a good chance of receiving probation.

The district court in this proceeding, after hearing testimony from the petitioner and one of the arresting officers, and after receiving transcripts of the state court proceedings into evidence, held that petitioner had been given only a very skimpy warning at the time of his arrest and initial confession; that the warning did not include the assurance that if he needed an attorney and could not afford one, one would be appointed for him at no cost; and that petitioner wasn't advised as to his privilege against self-incrimination. The court further held that petitioner's plea of guilty was induced by promises of leniency and probation as well as by the prior illegal confessions. On the basis of these findings the writ issued.

The questions presented by the instant facts are (1) whether the court below erred in holding that the statements by police testified to by petitioner constituted promises which rendered the subsequent guilty pleas involuntary; (2) whether the court below erred in holding that the confessions were illegally obtained; and if so, (3) whether it erroneously held that the confessions induced the guilty plea in such a manner as to render the plea involuntary. In view of our disposition of the first issue—it is unnecessary to consider the latter two.

■ A guilty plea, if induced by promises or threats which deprive it of its voluntary character, is void, and a conviction based upon such a plea is subject to collateral attack. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).[2] Moreover, the use of promises or threats calculated to deprive a defendant of his freedom of choice is a denial of procedural fairness guaranteed by the Fourteenth Amendment sufficient to vitiate a plea of guilty so induced.[3]

■■ In a case such as this it is for the trier of the facts to determine whether promises by an official were made or whether statements which the accused could consider to be official promises were made, and, if so, whether such promises induced the plea of guilty. Not every promise is improper,[4] but promises of leniency are generally held to be improper and capable of voiding a plea of guilty.[5] This is particularly so

2. *See also* United States ex rel. Williams v. Follette, 408 F.2d 658 (2d Cir. 1969); Crow v. United States, 397 F.2d 284 (10th Cir. 1968); Semet v. United States, 369 F.2d 90 (10th Cir. 1966).

3. Shupe v. Sigler, 230 F.Supp. 601 (D. Neb.1964); Barber v. Gladden, 220 F. Supp. 308 (D.Or.), aff'd 327 F.2d 101, cert. denied 377 U.S. 971, 84 S.Ct. 1654, 12 L.Ed.2d 741 (1963).

4. *See, e. g.,* Lassiter v. Turner, 279 F. Supp. 231 (D.N.C.1968); Stoeckle v. Burke, 241 F.Supp. 157 (D.Wis.1965).

5. Scott v. United States, 349 F.2d 641, 643 (6th Cir. 1965); Yates v. United States, 245 F.Supp. 147, 151 (D.Va.1965); Shelton v. United States, 242 F.2d 101, 114 n. 6 (5th Cir. 1957) (Judge Tuttle, dissenting).

when such promises are unfulfilled or unfulfillable.[6]

In the case at bar there is substantial evidence in support of the finding of the trial court that the guilty plea was induced by promises. Petitioner testified that he was told: "If this is the first time you have been in trouble you will probably get probation if you will cooperate with the courts." Sheriff Chapple admitted that he said "it seemed like to me in the conversation that the easiest way is the best way, or something like that."

The district court had before it evidence as to the subjective conditions of the petitioner at the time. He was a twenty-two year old first offender, who had not had any prior experience with the law, and who didn't know anything about his legal rights. The determination of whether a plea of guilty is voluntary "involves an evaluation of psychological and other factors that may reasonably be calculated to influence the human mind. The issue of the defendant's state of mind 'is to be decided by the trier of the fact, whether court or jury, just as any other fact issue—the reasonable inferences to be drawn from all the surrounding facts and circumstances." United States v. Colson, 230 F.Supp. 953, 955 (S.D.N.Y.1964) (Citing: United States v. Tateo, 214 F. Supp. 560, 565 (S.D.N.Y.1963)).

In view of the foregoing, we must conclude that the district court's decision in granting the writ of habeas corpus, supported as it was by creditable testimony, was correct. Hence, it is unnecessary to consider the validity of the confession or its influence *per se* on the plea of guilty.

We must further determine whether the district court abused its discretion in ordering the outright release of the petitioner. We are constrained to hold that the discharge of petitioner following the granting of the writ of habeas corpus should have been delayed for a reasonable time so as to afford the state an opportunity to correct the defects on which the order was based (absent unusual or exceptional circumstances). The order of immediate discharge was error.

Accordingly, the trial court's order discharging petitioner is reversed. The State of Utah can validly reapprehend the petitioner and proceed to rearraign and retry him at its option.

The mandate in the instant case shall issue forthwith. The clerk of the district court is ordered to forthwith issue all necessary process, including the issuance of a bench warrant, to effectuate our mandate. Such, however, shall in no way be interpreted as limiting the warden, or any other authorized officer of the State of Utah, from using state authority to effectuate the return of the petitioner to the custody of the warden.

6. Judge Tuttle proposed the following rule for determining the voluntariness of a guilty plea:

   * * * [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

   Shelton v. United States, 242 F.2d 101, 115 (5th Cir. 1957) (Judge Tuttle, dissenting) rev'd on rehearing, 246 F.2d 571, rev'd (on confession of error by Solicitor General), 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958).