**Ronald DOWNTON, Petitioner,**

v.

**E. P. PERINI, Supt., Respondent.**

No. C 78–620.

United States District Court,
N. D. Ohio, W. D.

March 11, 1981.

Robert S. Catz, Nancy Lee Firak and Ralph S. Tyler, College of Law, Cleveland, Ohio, for petitioner.

William J. Brown, Atty. Gen. by Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## ORDER

WALINSKI, District Judge.

This cause came to be heard on respondent's objections to the Magistrate's Report and Recommendation filed on January 7, 1981. Said report recommended that petitioner be granted a writ of habeas corpus. Respondent's objections raise two issues which the Court will address in its review of this cause. Respondent has stressed its assertion that petitioner was informed that an attorney would represent him if he chose to stand trial, and has urged that petitioner has failed to rebut the presumption of truth that attached to his solemn declaration in open court when he entered the plea of guilty.

Even if, at the time the threat to withdraw was made the attorney also informed the petitioner that another attorney would be appointed to represent him at trial, it is evident that this was insufficient to allay petitioner's fears that he would be inadequately represented at trial. It appears from petitioner's testimony, both in state court and in this Court, that he believed that no other attorney could be adequately prepared in the short amount of time remaining before trial. (St. Tr. 43, 46; F. Tr. 82–83.) It is clear that if petitioner was informed that other counsel would be available, it did not mitigate the effect which counsel's threat to withdraw had in over-bearing petitioner's desire to stand trial. Therefore, the Court concludes that even if petitioner was informed that counsel would be available, this was insufficient to assure that petitioner's guilty plea was voluntary.

Respondent has cited *Dussell v. Jago,* Case No. C 78–325 (N.D.Ohio W.D.1979), *aff'd,* 647 F.2d 164 (6th Cir. 1981), in support of the contention that petitioner has failed to rebut the presumption of truth that attached to his solemn declaration in open court when he entered the plea of guilty. However, that case is distinguishable from the case *sub judice.* In *Dussell,* the petitioner alleged that his attorney coerced him into waiving a jury trial for a three-judge panel by threatening him with the likelihood that he would receive the death penalty if he had a jury trial. This is clearly different in nature from counsel's threat to withdraw shortly before trial. More importantly, however, the only evidence which Dussell could have produced to support his claims was that his attorney had urged his parents to coerce him into waiving his right to a jury trial. The court concluded that such persuasion, not amounting to threats, even if proved could not establish the sort of compulsion that would invalidate a plea entered with full understanding of the consequences. In the case *sub judice* the Court has concluded that counsel's threat to withdraw if petitioner did not enter a plea of guilty to second degree murder does establish the sort of compulsion which would invalidate the plea. Petitioner's counsel has testified that he did threaten to withdraw. Therefore, petitioner has rebutted the presumption of truth that attached to his solemn declaration in open court when he entered the plea of guilty.

The Court having reviewed the Magistrate's Report and Recommendation, the findings and recommendations contained therein, respondent's objections thereto, and the record in this cause,

IT IS ORDERED that the Report and Recommendation are adopted as the Order of this Court. A writ shall issue unless the petitioner is placed on trial within 90 days

of the entry of this Order, or a timely appeal is taken by the respondent, in which case the mandate should be stayed pending appeal.

## MAGISTRATE'S REPORT AND RECOMMENDATION

### Dec. 30, 1980.

JAMES G. CARR, United States Magistrate.

A Magistrate's Report and Recommendation was initially filed in this habeas corpus case on May 27, 1980. In that report, I recommended that the petition for a writ of habeas corpus be conditionally issued. This recommendation was based on the findings that petitioner's plea of guilty had been obtained as a result of ineffective assistance of counsel, and further, that his plea was not voluntary.

The basic fact in the record which led to these findings and the recommendation to grant the writ was that the petitioner's state court attorney had, shortly before trial was to commence, told the petitioner that he would withdraw as counsel if a plea was not entered to second degree murder. This statement by counsel, which was not disputed by the respondent, was found by me to have violated the sixth amendment right to counsel and also to have induced an involuntary plea.

The record before me contained no indication that state court counsel had informed the petitioner that, if he were permitted to withdraw, he would take all necessary steps to protect the petitioner's right to counsel at trial. The absence of such assurances was viewed by me in the original Report as an important consideration in assessing petitioner's sixth amendment claim. (See R & R at 7, 8).

After the First Report was filed, the respondent filed objections, attaching thereto an affidavit from petitioner's former attorney. This affidavit asserted certain facts concerning the attorney's conduct and counsel which did not appear in the record of the state court proceedings. Most important, the affidavit stated that the attorney "re-

peatedly told his client, Ronald Downton, that the decision to enter a plea of guilty was solely that of his client," and that the attorney informed the petitioner that, in the event a motion to withdraw were granted, "the Court would appoint another attorney to represent Ronald Downton."

As a result of the respondent's objection, this matter was recommitted to the undersigned by the Hon. Nicholas J. Walinski "for further consideration in light of the respondent's objection" to the original Report. Because a factual issue had been placed in dispute as a result of the affidavit attached to the respondent's objection, see *Coleman v. Wilson*, 401 F.2d 536, 537 (9th Cir. 1968), I set an evidentiary hearing for October 1, 1980, hoping thereby to allow the parties to develop a full record (for this court and review) of the circumstances surrounding the threat to withdraw and its effect.

The October 1 hearing took, however, a rather unusual procedural course. At the outset, both parties declined to call any witnesses (Federal Tr. 6, 7). Thereupon, I called the petitioner's former attorney as the court's witness pursuant to Fed.R.Evid. 614. Thereafter, the petitioner was allowed, over the respondent's vigorous objection, to testify in rebuttal. To provide the respondent with an opportunity to submit further evidence in response, respondent was given leave to have the record reopened to take further testimony from the state court attorney, who had previously been dismissed and was no longer available when the October 1 hearing concluded. No request to reopen the record was forthcoming from the respondent.

Leave was also granted to the parties to submit additional briefs in light of the evidence developed at the October 1 hearing. Petitioner accepted such opportunity; respondent has not filed a further brief or memorandum. The matter is, therefore, decisional.

Upon consideration of the evidence developed at the October 1, 1980 hearing, reconsideration of the original briefs and my

earlier Report, consideration of the petitioner's post-hearing supplemental brief, and additional legal research concerning the issues raised in this case, I am of the opinion that the petition for a writ of habeas corpus should be granted. This recommendation is based on my finding that the defendant did not receive the benefit of constitutionally sufficient counsel, and, further, that his plea of guilty to a lesser charge was involuntary.

For purposes of the record, the original Report and Recommendation filed by me will be vacated, and this Report and Recommendation will incorporate my reasons for recommending that the petition be granted.

### A. Factual Background

The petitioner was indicted for first degree murder on May 11, 1971, by the Allen County, Ohio, grand jury. His family retained an attorney to represent him (St. Tr. 23, 28), and this lawyer represented him for a thirteen month period until petitioner's plea of guilty to a reduced charge was entered.

All three witnesses at the post-conviction relief hearing (petitioner's ex-wife, his mother and the attorney) testified that the petitioner desired to exercise his right to trial (St. Tr. 11 (ex-wife), 33 (mother), 67 (attorney)). In addition the petitioner testified that he had consistently stated that he wanted a trial (St. Tr. 40, 42). The petitioner (F. Tr. 70) and his former attorney (F. Tr. 19) repeated this testimony at the evidentiary hearing in this court. In the petitioner's mind, he was guilty of manslaughter (St. Tr. 40), rather than any degree of murder, because he had committed the offense without malice or premeditation. According to the petitioner's testimony, he told the attorney "I didn't want to beat the charge outright. All I want to do is take the stand at the end and show that it was not with premeditation or malice as charged in the indictment." (St. Tr. 42–43).

The attorney, however, was persuaded, based on his investigation and analysis, that in all likelihood trial on the indictment would lead to a first degree murder conviction (St. Tr. 66). Thus, in his mind, "The only question was whether there was going to be capital punishment or not, whether we could get enough evidence to show mercy in the case to save him from the electric chair." (*Id.*) The prosecutor's office would not agree to a reduction to manslaughter (St. Tr. 63), and when the offer of a reduction to second degree murder came "rather late in the game" the attorney "very strongly advised Ronald and his wife and his mother and stepfather that we should change the plea to guilty of second degree murder." (St. Tr. 66).

Against this background of (a) the petitioner's insistence that he stand trial and (b) the lawyer's certainty that conviction would result and his concern about the possible imposition of the death penalty, the lawyer undertook the efforts to persuade the petitioner to plead guilty which are the basis for petitioner's habeas corpus petition.

Approximately two weeks prior to the date on which petitioner's case was scheduled for trial, his attorney contacted petitioner's mother, Mrs. Ruby May Jones. Mrs. Jones went to the attorney's office to talk with him (St. Tr. 25, 30–31). When asked what the lawyer said at this meeting, Mrs. Jones testified at the post-conviction relief hearing as follows:

A: He said he didn't have anything to go on. His hands were tied. He didn't have any witnesses, and that he would have to withdraw from the case if Ronnie didn't plead guilty.

Q. That he could not represent him?

A. He said he could not represent him, and Ronnie couldn't get another attorney within two weeks. He had been in jail 13 months, and he could not get another attorney. He was upset. (St. Tr. 31).

Thereafter, shortly before the case was scheduled for trial, the attorney went to the home of Mrs. Jones and asked her to accompany him to the K-Mart store where petitioner's wife, Gwennetta Fay Downton, was employed. The three of them then drove together to the jail where petitioner was incarcerated (St. Tr. 31–32).

En route to the jail to meet with the petitioner, there was a discussion relating to the attorney's withdrawal if the petitioner did not accept the offer to plead to second degree murder (St. Tr. 68). According to the attorney's testimony at the post-conviction hearing, he told petitioner's wife and mother "that I was going to advise Ronnie that if he would not follow my advice that I didn't think I should represent him and would withdraw from the case." (*Id.*) The lawyer testified further that he told petitioner's wife and mother that, if his effort to change his client's mind were unsuccessful, he would continue to represent the petitioner (St. Tr. 68–69). Nonetheless, his purpose in advising the client that he would withdraw if his advice were rejected was "to strongly urge Ronnie to enter a plea of guilty to second degree murder." (St. Tr. 69).

Once at the jail, the attorney, according to petitioner's testimony, told him "Ronnie, I don't have anything to work with and, therefore, I'm telling you now that if you don't plead guilty, then I'm withdrawing from the case" (St. Tr. 42) and "that the only way he would go to court with me was if I plead guilty" (St. Tr. 43). Petitioner Downton's testimony at the state hearing on the remainder of what transpired at this meeting, the aftermath of the meeting, and the impact of his lawyer's statements was as follows:

Q. What else transpired at this meeting in the County Jail?

A. My wife, she became hysterical. She started crying and my mother—tears started rolling from her eyes. She was down hard because this incident came about. Probably she felt like I did; when you hire somebody, you expect to get something or what you paid for. I had made my decision in this matter known, and he made his opinions or decisions known to me. Still mine didn't mean anything.

Q. And when you said that you wanted to go for a trial, what was his response in regards to an appeal?

A. We had been talking—well, I asked him where we would go if I am found guilty at the trial. I said that maybe we could get an appeal. He said, "Ronnie, I never handled an appeal. So, I don't know anything about appeals." I said, "You mean to tell me that you went to law school all those years and you don't know anything about appeals?" He said, "No." I said, "Well—" that just did it as far as I was concerned.

Q. Okay, did he already tell you that he wasn't going to trial, that he was going to withdraw from the case?

A. Yeah.

Q. Was your wife crying during this time?

A. Yeah, she was crying.

Q. Was your mother upset?

A. Very much so.

Q. When was the plea?

A. The plea was the next day, the very next morning. It was ten o'clock, I think.

Q. And did you execute the written waiver in court saying there were no threats or promises made?

A. Did I sign one? Yes.

Q. Where did you sign that?

A. Well, for one thing, I didn't have any choice as far as being threatened. I never for a minute dreamed or even thought that my attorney that I had hired with money would threaten or deceive me at the last moment before trial. It was something like the Prosecutor saying to me, "Well, if you don't plead guilty, then we will charge you with four or five more counts."

Q. You would perceive that as a threat?

A. Yes, I would.

Q. Did you really perceive the attorney's threat to withdraw as a threat to influence you to plead guilty?

A. At the time did I think it was?

Q. Right.

A. Yeah, I guess it was.

Q. Why did you sign the waiver then?

A. I didn't have a choice. The only choice I seen that I had was to get another attorney with no time to spare, and it was just suicide.

Q. Your life was on the line?

A. My life was on the line. I would go into court with no other attorney with that short of time to familiarize himself with the case (St. Tr. 44–46).

At the hearing in this court, the petitioner described the scene in similar terms (F. Tr. 77–83). Although there were some embellishments at the federal hearing (regarding the attorney calling the petitioner stubborn and hardheaded (F. Tr. 77) and the momentary presence of the prosecutor (F. Tr. 82)), the petitioner's later account about the threat to withdraw was similar to his testimony at the state postconviction hearing.

At the state hearing the attorney did not dispute petitioner's statements regarding his statement that he would withdraw if the state's offer were rejected and the petitioner insisted on standing trial on the first degree murder charge. He acknowledged that "I did inform him that I would withdraw if he didn't follow my advice in pleading guilty to second degree murder." (St. Tr. 71).

At the hearing in this court the attorney testified that he had had many discussions about a plea with the petitioner, and that the petitioner indicated he did not want to plead to second degree murder (F. Tr. 19). According to the attorney, "There wasn't any question in my mind of what he should do, and I was doing everything I could to convince him that this is what he should do. He was reluctant to do it." (F. Tr. 26). The petitioner did not seem to fear the death penalty (*Id.*). The attorney told the petitioner that he would withdraw because, "I wanted to persuade him to follow my advice of entering a plea to second degree murder." (F. Tr. 56). He had, however, assured the petitioner's wife and mother that he would continue to represent the petitioner, though his purpose in having them come with him to the jail was to add

their persuasive power to his to have the petitioner plead to the reduced charge (F. Tr. 57).

Viewing the state court record, the Ohio Court of Appeals held that the attorney's conduct had not deprived the petitioner of his right to adequate counsel, and further, that there was no conclusive evidence that the threat to withdraw induced the guilty plea. In my opinion, the Ohio Court of Appeals was in error in its interpretation of the record and its legal and constitutional significance. Viewing the totality of the circumstances in light of decisions of other courts confronting similar situations, it is clear to me that the only conclusion which can be reached is that the plea was rendered involuntary by the threat to withdraw, and further, that the petitioner did not receive adequate assistance of counsel.

B. Voluntariness of the Plea

In dismissing the petitioner's post-conviction relief action, the state trial court in its bench opinion stated:

there is no evidence that this defendant was coerced into pleading guilty ... There is no competent evidence that this plea was anything but voluntarily and intelligently and knowingly made ... He chose to take his attorney's advice to plead guilty to second degree murder and did so.

I must say I am somewhat surprised at the almost total lack of any evidence of any competent nature in this case to support this petition on behalf of the defendant. (St. Tr. 79–80).

The Court of Appeals held that it was bound by the trial court's assessment of credibility and its conclusion (i. e., the plea was voluntary). The appellate court also, however, examined the record and held further that a) counsel's conduct "did not constitute a threat coercing the plea" (Respondent's Return, Exhibit 4, pg. 27), and b) in any event, "there is no conclusive evidence that it induced the guilty plea ... and the trial court could very well find, if it first found that there was threat or coercion, that such threat or coercion did not induce

the plea. We cannot, in such circumstances, find as a matter of law, otherwise." (*Id.* at 28).

Contrary to the trial court's conclusions, it is clear that there was competent evidence presented in the post-conviction hearing to support the claim that the plea had been induced by the threat to withdraw. If the term "competent" was used by the trial judge in the usual sense of relevant, material and admissible, then there was such evidence presented at the hearing by not only the petitioner and his witnesses, but by the state's witness—the petitioner's former attorney—as well.

Moreover, to the extent that the trial court made a factual finding that the plea had not been induced by the threat to withdraw and the disclaimer by counsel of his ability to handle an appeal, that factual finding was, in my opinion, not supported by the record. Therefore, it should not have been upheld by the court of appeals, and should not be adopted by this court; nor should such factual finding bar examination by this court of the record or this court's reaching of a contrary finding (i. e., that the plea was induced improperly) and granting of relief on the additional basis that the plea was involuntary. 28 U.S.C. § 2254(d)(8). See *Dodge v. Johnson*, 471 F.2d 1249, 1250–51 (6th Cir. 1973); *Woodards v. Cardwell*, 430 F.2d 978, 981 (6th Cir. 1970) ("It is the accepted rule in federal habeas corpus proceedings that state factual determinations not fairly supported by the record cannot be conclusive of federal rights.").

The Supreme Court has stated unequivocally that, "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). And the Sixth Circuit has stated that "the correct rule of law" is "that a plea which is the product of coercion and false promises cannot be tolerated." *McDonald v. Kropp*, 373 F.2d 549, 552 (6th Cir. 1967).

In *Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970), the Supreme Court stated that "the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." Certainly if the state cannot apply undue pressure to obtain a guilty plea, then a defendant's own attorney is foreclosed from improper tactics which impose the lawyer's will on the client. There is a difference between encouraging a client to plead guilty and compelling him to do so, although it may be difficult to delineate clearly the boundary between permissible encouragement and impermissible compulsion. *Cf. Machibroda, supra*, 368 U.S. at 493, 496, 82 S.Ct. at 513, 514. But here, where the attorney acknowledges his purpose, and where his efforts are successful, the only conclusion which can be drawn is that the plea of guilty was not entered voluntarily by the petitioner's choice but at his attorney's direction.

The record is clear that the petitioner had always expressed his intention to stand trial on the first degree murder charge. His only willingness to consider a plea was if the state were to reduce the charge to manslaughter (St. Tr. 40). Moreover, this is not a case in which the plea appears to have been entered to avoid the death penalty. (St. Tr. 46, F. Tr. 26). Petitioner's insistence that he go to trial contradicts any conclusion that could be drawn that the plea was motivated by his fear of the death penalty.

This is not a case like *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), where the defendant claimed his plea was involuntary because the danger of death induced him to give up his right to trial. This case presents the opposite situation: petitioner claims he was forced to plead despite his willingness to accept the possible consequence of capital sentence if found guilty at trial. Had he not been so willing to run this risk, his lawyer would not have found it necessary to employ the device of threatening to withdraw in order to have him change his mind. The lawyer's employment of this tactic can only be understood in the context of peti-

tioner's willingness to place his life at stake in order to have his trial. This may have been foolhardy, even suicidal, but the petitioner was entitled to make this decision free from the compulsion which counsel employed.

An important factor in this case is the attorney's purpose in stating he would withdraw if the plea were not accepted. As he forthrightly testified at the evidentiary hearing in this court, "I was doing everything I could to convince him that this is what he should do." (F. Tr. 26). When asked why he told the petitioner that he was going to withdraw, the attorney's response was that, "I wanted to persuade him to follow any advice of entering a plea to second degree murder." (F. Tr. 56). In such circumstances, the correct rule of law appears to have been succinctly stated by the Tenth Circuit: "the use of promises or threats calculated to deprive a defendant of his freedom of choice is a denial of procedural fairness guaranteed by the Fourteenth Amendment sufficient to vitiate a plea of guilty so induced." *Reed v. Turner,* 444 F.2d 206, 208 (10th Cir. 1971).

Although there appear to have been relatively few cases involving attorneys who threatened to withdraw in order to cause their clients to accept their advice to enter guilty pleas, it has been held that such conduct renders the ensuing plea involuntary. *See Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973); *Commonwealth v. Velasquez,* 437 Pa. 262, 263 A.2d 351 (1970). In both cases the Pennsylvania Supreme Court held that pleas, entered because counsel threatened to withdraw, were involuntary. That an attorney's efforts at persuasion may be deemed improperly coercive has also been upheld within this Circuit. In *Peete v. Rose,* 381 F.Supp. 1167 (W.D.Tenn.1974) (Brown, C.J.), the court held that an attorney's statements to his client that if he did not plead guilty he would get a "Ku Klux" jury and the "chair" constituted threats which rendered his plea involuntary.

My decision that the plea was coerced by the threat to withdraw is not based on the fact that members of the petitioner's family were present at the meeting between the petitioner and his attorney. The fact that he brought them along is a further indication of his desire to have the petitioner accept the plea offer. But the fact of their presence and involvement is not a basis for claiming that the plea was involuntary. The courts have consistently rejected claims that participation by family members causes an ensuing plea to be coerced. *See, e. g., Wojtowicz v. United States,* 550 F.2d 786, 792 (2d Cir. 1977); *Lunz v. Henderson,* 533 F.2d 1322, 1327 (2d Cir. 1976); *Denson v. Peyton,* 299 F.Supp. 759, 762 (W.D.Va.1969). In these cases, the attorney deliberately involved family members to have them encourage the defendant to change his mind. But the attorneys' efforts in these cases did not include assertions that they would no longer represent the defendants if the plea offer was not accepted. It is, quite simply, one thing to enlist the aid of outsiders; but it is quite another to employ as a tactical weapon a threat to sever the attorney-client relationship.

To be certain, there are cases which the respondent might have called to the court's attention which contain language which arguably could support the method used by the petitioner's attorney in this case. Thus, the Ninth Circuit has stated that, "one of our attorney's most valuable functions" is "to persuade his client to take that course which, to the attorney, in the light of his experience, appears to be the wisest." *Devers v. People of the State of California,* 422 F.2d 1263, 1264 (9th Cir. 1970). In *Lunz, supra,* the Second Circuit stated, "Advice— even strong urging—by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion. This is especially so where, as here, an accused's life is at stake." 533 F.2d at 1327. And the Fifth Circuit has held that:

> Counsel is the manager of the lawsuit. If the best professional advice that a lawyer can give is to enter a guilty plea and the accused relies on the lawyer's expertise,

266

the accused cannot later successfully argue that the plea was involuntary on the basis of counsel coercion. *Schnautz v. Beto*, 416 F.2d 214, 215 (5th Cir. 1969).

None of these cases, however, involved a statement, or even a suggestion that counsel would withdraw if the plea were not entered. Moreover, such statements as the attorney is "the manager of the lawsuit" and one of his "most valuable functions" is to persuade the client to plead guilty cannot have unlimited application. If they did, then the emphasis given in *Brady, supra*, 397 U.S. at 748, 90 S.Ct. at 1468, to the choice which the client is to exercise would be meaningless. Instead, counsel's management and persuasive function must not intrude into an area of ultimate decision making. That is, however, what occurred in this case when, shortly before the trial date, counsel threatened to withdraw.

Granting relief in the present case, it should be noted, should not have an adverse impact on the state's administration of its criminal process, or on the federal courts which must deal with later challenges to guilty pleas. This case presents a unique factual circumstance: the attorney acknowledged making the statement intending that it change the defendant's mind. As *Ray v. Rose*, 535 F.2d 966, 972–73 (6th Cir. 1976) makes clear, the burden remains on the client to prove his allegations of improper coercion, and this may be difficult where the attorney denies making the statements attributed to him. The many cases rejecting claims of undue coercion by counsel show quite clearly that only rarely will a challenge of this type be successful. In most instances the attorney will testify that he did not act or speak in the manner claimed by his former client, and the court will give credence to the lawyer's testimony. *See, e. g., Mink v. Kropp*, 361 F.2d 323 (6th Cir. 1966).

Thus, upon a review of the record of the state post-conviction relief hearing and of the evidence presented in the evidentiary hearing in this court, I find that there is uncontroverted evidence that the attorney threatened to withdraw unless a plea was entered; and I find further that the only conclusion which can be drawn from the record and circumstances taken as a whole is that the petitioner's plea was not voluntarily entered. As a result, his rights to trial and due process of law were taken from him in violation of the constitutional guarantees of the fifth, sixth and fourteenth amendments.

C. Adequacy of Representation

The Sixth Circuit has held that to satisfy the Sixth Amendment, counsel must render "reasonably effective assistance" to the client. *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974). The question for decision in this case is whether by threatening to withdraw in order to secure a plea of guilty and not ensuring that the ensuing plea was voluntary, the attorney was rendering reasonably effective assistance. Petitioner can prevail only if he establishes that the attorney's action was "outside the 'range of competence demanded of criminal cases.'" *Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

It should be noted that there is no indication that the attorney's efforts to obtain petitioner's acceptance of the state's plea offer were motivated by anything other than a genuine and sincere belief that the plea was in the client's best interests. At the time the case was pending, a capital sentence could have been imposed, and the attorney was clearly, understandably, and, indeed, necessarily concerned about that possibility. For counsel to have disregarded the risk of a death sentence as he worked on his client's behalf and counseled him would have been unconscionable.

Moreover, it is apparent from the record that counsel's advice and efforts were the product of adequate preparation, investigation, and analysis of the state's case and his own. The state court judge appears to have based his denial of petitioner's post-conviction relief petition largely on the manifest evidence of the attorney's efforts to be found in the court file (St. Tr. 78). In light of this and other evidence in the record relating to counsel's pretrial prepara-

tion (St. Tr. 79), petitioner has understandably abandoned in this habeas case his earlier complaint about the quality of counsel's investigation and preparation. The adequacy of counsel's efforts up to the time he sought to compel the petitioner to accept his advice to plead by threatening to withdraw does not, however, insulate his efforts from scrutiny. The issue in this case is not the advice that the attorney was giving, or even whether it was the best choice for the client to make, but the method used to have that advice accepted.

In most instances an attorney has great leeway and complete control over the course of the defense. An attorney must be able to determine questions of trial strategy. *Coco v. United States*, 569 F.2d 367 (5th Cir. 1978); *United States ex rel. Cruz v. LaVallee*, 448 F.2d 671, 679 (2d Cir. 1971). Deciding what objections to make either to evidence or the court's instructions, *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), *Nelson v. California*, 346 F.2d 73 (9th Cir.), *cert. denied*, 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965), what motions to file, *Armstrong v. United States*, 367 F.2d 821 (7th Cir. 1966), what witness to call, *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, (2d Cir. 1974), *cert. denied*, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144; *Davison v. Oklahoma*, 428 F.Supp. 34 (W.D.Okl.1976), and what question to ask and which arguments to make are questions for the attorney. The cases cited above make clear that a lawyer's failure to follow the client's desires or directives concerning these matters will not cause the attorney's representation to be considered constitutionally inadequate. These are areas in which the ultimate decision is for the lawyer to make in his best professional judgment.

Where, however, the decision involves surrender of a fundamental right, rather than employment of a particular strategy or tactic, a personal waiver by the client is required. *United States v. O'Looney*, 544 F.2d 385 (9th Cir. 1976). For example, a defendant must personally waive his rights and to plead guilty, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), to confront witnesses, where such waiver was the practical equivalent of a guilty plea, *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), to counsel and to refrain from self-incrimination, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to appeal, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and to jury trial, *Patton v. United States*, 281 U.S. 276, 74 L.Ed. 854 (1930).

In such circumstances the ultimate decision is for the client and not the attorney. See *United States v. Jones*, 392 F.2d 567, 569 n. 3 (4th Cir. 1969) (*"the ultimate decision belongs to the client."*) (emphasis in original). See also *Wright v. Estelle*, 572 F.2d 1071, 1077 (5th Cir. 1978) (Godbold, Jr., dissenting from en banc affirmance of 549 F.2d 971 (5th Cir. 1977)). For example, a client's determination to testify at his trial, despite counsel's firm belief that he should not take the stand, cannot be countermanded by the lawyer's decision to withdraw if the client persisted in his decision to be heard. *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir. 1977). In *Wilcox* the court referred to the client being placed in a completely untenable position by such threat, as he was "being forced to choose between his right to testify and his right to counsel ... The threatened loss of counsel here not only violated appellee's Sixth Amendment rights but worked as a lever to pry from appellee his statutory right to testify." 555 F.2d at 120–21.

The question of whether, as believed by the Third Circuit in *Wilcox*, the decision to testify is ultimately for the client to make, rather than the attorney, is disputed. See *Sims v. Lane*, 411 F.2d 661 (7th Cir. 1969). Nonetheless, the principle applied in *Wilcox* —that an attorney cannot, by threat of withdrawal, exercise control over decisions which are the client's to make—is applicable in the present case. Certainly there can be no dispute that, with reference to a plea of guilty, no one but the client can make the final decision:

Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of *his own choice*. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1979) (emphasis added).

The constitutional principle that the decision to plead guilty is for the client to make has also been embodied in the Code of Professional Responsibility:

A defense lawyer in a criminal case has the duty to advise the client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but *it is for the client to decide what plea should be entered* . . . ABA Code of Professional Responsibility EC 7–7 (emphasis added).*

The record makes clear that the threat to withdraw was made with the express intention of causing the petitioner to abandon his stated and strong desire to stand trial on the indictment (St. Tr. 69) (F. Tr. 26, 56). When he made the statement, the attorney forced upon his client the impossible choice of giving up either his constitutional right to trial or his constitutional right to be represented by counsel at trial. Instead of assisting his client, the attorney used the threat of withdrawal to take upon himself the decision—to plead or stand trial—which clearly was not his, but his client's to make.

There is an additional consideration which must be taken into account when assessing counsel's performance: namely, whether he adequately represented the petitioner at the time the plea was entered. In several cases the Fifth Circuit has stated that an attorney's function regarding a guilty plea is to ascertain and ensure that the "decision so to plead is voluntarily and knowingly made." *See, e. g., Collins v. Green*, 505 F.2d 22, 24 (5th Cir. 1974). Indeed, that Circuit has stated that this is the limit of counsel's professional and constitutional responsibility. *Id.* Although the cases in which this language has appeared generally involve claims of incomplete advice or other forms of inadequate performance, rather than a threat to withdraw, the principle nonetheless appears applicable to the plea entered by the petitioner in this case. Assuming that counsel's testimony at the evidentiary hearing in this court is correct (that he advised petitioner he could obtain another attorney) (F. Tr. 20–21), counsel remained obligated to make certain that the ultimate plea was voluntary, and not affected by a fear that no one would stand by petitioner's side if he elected to proceed to trial. This did not occur in this case, and with the result that counsel failed to perform his duty to ensure that the plea was voluntary.

I find, therefore, that even if, at the time the threat to withdraw was made the attorney also informed the petitioner of his right to continued assistance of counsel, he failed to make certain that the ensuing plea was in fact voluntary, thereby depriving the petitioner of the "reasonably effective assistance" guaranteed to him by the Sixth Amendment. In *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974), counsel's failure to advance "potentially exonerating defenses" deprived the defendant of his

---

* The state court of appeals read the next Ethical Consideration, which permits withdrawal where the client insists on a different course of conduct in a "non-adjudicatory matter", EC 7–8, as permitting counsel's conduct in the instant case. (Respondent's Return, Exhibit 4, pg. 27–28). The court's decision overlooked the limitation on withdrawal in the event of conflict to *non-adjudicatory* matters. A criminal proceeding is clearly an adjudicatory matter and thus withdrawal is not permitted under the Code of Professional Responsibility. More-

over, to adopt the appellate court's interpretation of this provision would be to create an irreconcilable conflict between EC 7–7 (which makes clear that the choice to plead is for the defendant) and EC 7–8 which relates to a duty to withdraw in non-adjudicatory matters. If EC 7–8 applied where the client refused to plead, then withdrawal under that provision would compel the client to plead, thereby depriving him of the free choice mandated by EC 7–7.

right to counsel. In this case, the same effect resulted from a) the employment of a tactic which intruded into the defendant's ability to choose freely whether to stand trial or waive that right, and b) thereafter, failing to ensure that the ultimate plea was voluntary. Because petitioner's right to representation under the Sixth and Fourteenth amendments was not satisfied, the writ of habeas corpus should issue.

### Conclusion

For the foregoing reasons, I find that the petitioner's plea of guilty was not made voluntarily; and I find further that he did not receive adequate assistance of counsel prior to and at the time the plea was entered. It is therefore

ORDERED that the Magistrate's Report and Recommendation dated May 23, 1980, be and the same hereby is, vacated; and it is

RECOMMENDED that the District Court issue a writ of habeas corpus unless a) the petitioner is placed on trial within 90 days of the entry of the District Court's order, or b) a timely appeal is taken by the respondent, in which case the mandate should be stayed pending appeal.

The HERALD COMPANY, a New York corporation, doing business in Missouri as Globe Democrat Publishing Co., Plaintiff,