46 F.3d 1143
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gary Lee MIDDLETON, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-36128.
 United States Court of Appeals, Ninth Circuit.
 Submitted: Jan. 13, 1995.*
Decided: Jan. 30, 1995.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,** Senior District Court Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 * Gary Lee Middleton ("Middleton") appeals the district court's denial (without a hearing) of his motion pursuant to 28 U.S.C. Sec. 2255 to vacate his sentence. Proceeding pro se, he alleges ineffective assistance of counsel, an involuntary guilty plea, and unresolved factual errors in his Presentence Report ("PSR") which would affect both his sentence and his placement within the Bureau of Prisons ("BOP"). We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm the district court's denial of Middleton's section 2255 motion, but we remand to ensure that the sentencing court complies with Rule 32.
 
 II
 
 4
 * We first conclude that we have jurisdiction to entertain Middleton's appeal.
 
 
 5
 The government argues that Middleton's plea agreement forecloses him from collaterally attacking his sentence because he agreed that he would "not appeal the imposition of an 88 month sentence or otherwise contest the jurisdiction or authority of the court to impose such a sentence under these charges and circumstances." The government relies on United States v. Abarca, 985 F.2d 1012 (9th Cir.), cert. denied, 113 S. Ct. 2980 (1993) to bar Middleton's collateral attack on his sentence, and hence this appeal. In Abarca, the defendant agreed in a plea agreement to waive the right to appeal "any sentencing issues" on condition that he receive a sentence that did not exceed the applicable guideline range. Abarca, 985 F.2d at 1013. The court held that a section 2255 motion based on the issue of the degree of Abarca's culpability was subject to this waiver.
 
 
 6
 We conclude that the government's reliance on Abarca is misplaced. In Abarca, the Ninth Circuit stated: "[W]e do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver ..." Abarca, 985 F.2d at 1014 (citations omitted). We conclude that Middleton did not waive his right to collaterally attack his sentence with a section 2255 motion grounded in ineffective assistance of counsel and involuntary plea.
 
 B
 
 7
 We next conclude that Middleton was not denied effective assistance of counsel.
 
 
 8
 Middleton specifically challenges (1) his attorney's alleged ignorance of federal criminal practice and sentencing guidelines; (2) his attorney's alleged failure to investigate; (3) his attorney's alleged failure to discuss the government's case and evidence with Middleton; (4) his attorney's alleged failure to secure a good plea agreement; and (5) his attorney's alleged frustration of Middleton's appeal attempts. We conclude that all of Middleton's allegations are meritless.
 
 
 9
 To demonstrate ineffective assistance of counsel, Middleton must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 690-92 (1984). To demonstrate that counsel's performance was deficient, Middleton must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a "strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance." Strickland, 466 U.S. at 689.
 
 
 10
 Here, the ultimate sentence achieved in light of Middleton's potential exposure to incarceration belies any ineffective assistance of counsel claim. Additionally, the record contains several instances where Middleton confirmed under oath his satisfaction with his attorney. See, e.g., Transcript of Change of Plea Hearing, ER 74-75 ("THE COURT: Now, are you fully satisfied with the advice and assistance your lawyer has given you? ... Mr. Middleton? DEFENDANT MIDDLETON: Yes, sir.... THE COURT: Is there anything more that your attorney could have done to counsel and assist you in this matter? ... Mr. Middleton? DEFENDANT MIDDLETON: No, sir.")
 
 
 11
 In an affidavit submitted to the district court, Middleton's attorney stated that he disclosed his relative inexperience in federal criminal matters, yet Middleton persisted in retaining him. Moreover, his attorney indicated that he investigated possible defenses and discussed them with Middleton. Furthermore, his attorney managed to obtain a plea agreement reducing a maximum exposure of 10 years' incarceration to 7 1/3 years even though almost no codefendants remained for Middleton to cooperate against. See, e.g., Transcript of Change of Plea Hearing, ER 65 (Arthur Roy Lee, the ringleader of the conspiracy, plead guilty at the same time as Middleton). Finally, although the plea agreement stated on its face that Middleton agreed not to appeal his sentence, the sentencing judge informed him that he could. Transcript of April 29, 1992 Sentencing Hearing at 12. Accordingly, Middleton's attorney rendered manifestly effective assistance. Because Middleton has not shown that his attorney's performance was deficient, we do not reach the second prong of Strickland.
 
 C
 
 12
 We also reject Middleton's claim that his guilty plea was coerced by his attorney.
 
 
 13
 Specifically, Middleton alleges that his attorney made him "feel that his guilt ... was a foregone conclusion right from the commencement of proceedings," and that "he had only two 'effective choices,' i.e.: either accept the government's plea offer of 88 months imprisonment or he could reject it, go to trial, and most assuredly, be sentenced to what's tantamount to a life sentence." ER 129-130. Middleton further accuses his attorney of holding "the threat of a 20-30 year sentence over the head of petitioner like the Sword of Damocles, until petitioner finally succumbed." ER 130. Finally, Middleton essentially accuses his attorney of denying him the duty of loyalty. ER 130 ("Petitioner contends that Counsel's actions and inactions to persuade him to plead guilty were tantamount to counsel's withdrawal of effective and diligent representation."); cf. Frazer v. United States, 18 F.3d 778, 782 (9th Cir. 1994) ("an attorney who adopts and acts upon a belief that his client should be convicted fails to function in any meaningful sense as the Government's adversary") (citations and internal quotations omitted).
 
 
 14
 A guilty plea must be the voluntary expression of the defendant's own choice. Brady v. United States, 397 U.S. 742, 748 (1970). A plea is void if it is induced by promises or threats which deprive it of the nature of a voluntary act. Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986) (quoting Machibroda v. United States, 368 U.S. 487, 493 (1972)). To determine voluntariness, we must examine the totality of the circumstances. Iaea, 800 F.2d at 866 (citing Brady, 397 U.S. at 749).
 
 
 15
 The record contains several instances where Middleton states under oath that he has not been coerced by anyone into pleading guilty. See, e.g., Transcript of Change of Plea Hearing, ER 92-93, 95 ("THE COURT: Gentlemen, have any of you been threatened or coerced in any way to obtain your plea of guilty? ... Mr. Middleton? DEFENDANT MIDDLETON: No, sir.... THE COURT: Now, gentlemen, is each of your guilty pleas freely and voluntarily made, with a full understanding of the nature of all the charges pending against you, with a full understanding of all the matters in these Plea Petitions, and with a full understanding of everything we've discussed in this hearing today? ... DEFENDANT MIDDLETON: Yes, sir.")
 
 
 16
 Nothing further in the record indicates that Middleton was subjected to threats by his attorney in order to induce him to accept the plea agreement. He submits a letter from his attorney suggesting that he contact the federal public defenders to pursue any possible appeal. This letter, written long after the proceedings concluded, indicates nothing. Furthermore, even if it indicated a reluctance to go to trial, "[m]ere advice or strong urging by third parties to plead guilty based on the strength of the [government's] case does not constitute undue coercion." Iaea, 800 F.2d at 867.
 
 
 17
 On the other hand, the Ninth Circuit has cited with approval an out-of-circuit district court opinion holding that a threat by counsel to withdraw shortly before trial if the client does not plead guilty renders a subsequent guilty plea involuntary. Iaea, 800 F.2d at 867 (citing Downtown v. Perini, 511 F. Supp. 258, 264-65 (N.D. Ohio 1981)). Nevertheless, even if Middleton's vague claim is true that his attorney threatened to withdraw on the eve of trial because Middleton's retainer only covered a guilty plea, and not his attorney's services at trial, the record reveals no prejudice. In Iaea, the defendant was sentenced to life imprisonment even though his attorney implied that he would get probation. Here, in contrast, Middleton got exactly what was agreed to: an 88-month sentence. This is not at all a case of counsel misleading the defendant, who gets a nasty surprise at sentencing.
 
 
 18
 Middleton might be claiming that his attorney erroneously exaggerated the risk of exposure to Middleton should he have insisted on going to trial. His attorney states in his affidavit that he discussed with Middleton what his attorney apparently believed was the maximum exposure to incarceration under the sentencing guidelines for the conspiracy charges in the original and subsequent indictments: 300 months. While it is unclear from the record whether this figure was an accurate indication of Middleton's exposure to incarceration under the original indictments, it certainly is not an accurate indication of Middleton's exposure under the ultimate charges of conviction under the information.
 
 
 19
 Nevertheless, Middleton was made aware that his maximum exposure was 10 years in his Petition to Enter a Plea of Guilty and by the district court at sentencing. Arguably, Middleton might not have been informed in a timely manner of the ten year maximum exposure under the information: The information was filed only on February 19, 1992, the same day Middleton changed his plea (and probably contemporaneously with his change of plea). Nevertheless, Middleton did not move to withdraw his plea before his sentencing at the end of April, 1992. Accordingly, we conclude that any mistaken apprehension that his maximum sentencing exposure was 300 months was cured by the district court's informing Middleton of his actual maximum exposure of 10 years during his change of plea hearing and his subsequent sentencing hearing.
 
 
 20
 Middleton also alleges a vague claim of coercion by the prosecution. Nothing in the record indicates any such coercion. We conclude that Middleton's coercion claim is meritless.
 
 D
 
 21
 Middleton's final claim is that the district court failed to resolve his challenges to the factual accuracy of his PSR. Middleton claims that those inaccuracies adversely affected his sentence. The district court advised Middleton that it would "defer" the contested issues to the BOP. See Transcript of April 29 Sentencing Hearing at 11; Findings of Fact Order, ER 111. But by finding that Middleton's offense level was 38, the district court in effect rejected Middleton's challenges to the factual findings in the PSR.
 
 
 22
 A defendant who challenges information used in sentencing must show that the information "is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." United States v. Edwards, 800 F.2d 878, 880 (9th Cir. 1986) (citations and internal quotations omitted).
 
 
 23
 The district court must resolve disputes concerning facts in the PSR according to Fed. R. Crim. P. 32 (c)(3)(D), which provides:
 
 
 24
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence report thereafter made available to the Bureau of Prisons.
 
 
 25
 Thus the sentencing judge must make a finding concerning the controverted information or make a determination that no such finding is necessary because the controverted matter will not be taken into consideration in sentencing. Edwards, 800 F.2d at 881. The sentencing judge must also append a written record of such findings to the presentence report. Edwards, 800 F.2d at 881. Strict compliance with Rule 32 is required, although mere failure to append the written findings will result in an order to the district court to append the required findings to the PSR. United States v. Fernandez-Angulo, 897 F.2d 1514, 1517 (9th Cir. 1990) (en banc).
 
 
 26
 At sentencing, Middleton disputed the facts in the PSR regarding his responsibility for placing an order for L-Ephedrine (PSR, p 22) and the ratio used to determine the amount of methamphetamine included in his relevant conduct (PSR, p 50). The district court did not resolve either of these disputes. Instead it "conferred" the matter to the BOP because the disputed facts only had "an effect on placement" within the federal prison system. ER 111. See also Transcript of April 29, 1992 Sentencing Hearing at 8 (government suggests that sentencing court "defer to the prison authorities in the resolution of that issue"). Nowhere on the record did the district court state that the resolution of these disputes was unnecessary because the judge was not taking them into account in passing sentence. See Edwards, 800 F.2d at 881-882. Indeed, the sentencing judge explicitly adopted the PSR offense level of 38, which would have been affected had the district court adopted Middleton's version of the proper ratio to use to determine the relevant amount of drugs.[1] If the facts in dispute were resolved in Middleton's favor, his final offense level would have been 36, instead of 38. This difference in offense level probably would not have affected Middleton's ultimate 88-month sentence because of his plea agreement. Arguably, the district court did not rely on any of the disputed matters in sentencing Middleton, because the ultimate sentence was 88 months. But the district court is required to either make a finding regarding the dispute or aver that it will not rely on the disputed information in arriving at its sentencing determination. Here the court did neither. Thus it failed to meet the requirements of Rule 32. Garfield, 987 F.2d at 1428. In addition, we note that it is unclear whether the "Statement of Reasons" (ER 110) has ever been appended to the PSR. Merely filing the statement with the district court clerk and copying it to the Probation Office and Middleton's counsel may not satisfy the requisites of Rule 32.
 
 III
 
 27
 We affirm the denial of the section 2255 motion. Because the district court did not comply with the requisites of Rule 32 by "conferring" the resolution of factual disputes to the BOP (in the absence of any authority to do so), we order the district court to either resolve the factual disputes to Middleton's PSR or to state explicitly that it did not rely on those matters in sentencing, and to ensure that the written statement is appended to Middleton's PSR for the benefit of the BOP.
 
 
 28
 AFFIRMED. We remand only for the limited purpose of the district court's compliance with Rule 32(c)(3)(D).
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 See Transcript of April 29, 1992 Sentencing Hearing at 9-10 (Middleton suggests that the proper ratio of precursor drug to resulting methamphetamine should be 50%, instead of the 70% used in the PSR, and that he only brought back 110 pounds of Ephedrine, instead of 210 alleged in the PSR, paragraphs 22 and 50)
 If the facts in dispute were resolved in Middleton's favor, his relevant conduct would include only 110 pounds of Ephedrine, instead of 210, at a 50% ratio. That would result in 55 pounds of methamphetamine from the Ephedrine, plus the 88 pounds resulting from the Phenylacetic acid (which he does not dispute possessing). PSR, p 50. 143 pounds of methamphetamine at 0.4536 kilograms per pound equals 64.86 kilos of methamphetamine. Under the 1991 Sentencing Guidelines (in effect during Middleton's April, 1992 sentencing), Middleton's resulting base offense level would have been 38, instead of 40. See U.S.S.G. Sec. 2D1.1(a)(3) (1991) and accompanying Drug Quantity Table.