Joseph Edward Francis LUNZ, Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondent-Appellee.

No. 128, Docket 75–2079.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1975.

Decided Feb. 26, 1976.

---

Leslie A. Blau, New York City (Paula Van Meter, New York City, on the brief), for petitioner-appellant.

Burton Herman, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a judgment entered March 26, 1975 in the Eastern District of New York, Edward R. Neaher, *District Judge*, dismissing a petition for a writ of habeas corpus by a state prisoner[1] who

---

1. This appeal was docketed in our Court and argued before us under the caption:

"UNITED STATES OF AMERICA ex rel. JOSEPH EDWARD FRANCIS LUNZ,
*Petitioner-Appellant,*
against
J. E. La VALLEE, Superintendent of Clinton Correctional Facility, Dannemora, New York,
*Respondent-Appellee.*"

The records of the district court support the statement in Judge Neaher's opinion that Lunz, at least at that date, was incarcerated at the Auburn Correctional Facility. The caption therefore is amended to reflect that he is in the custody of the superintendent of that facility.

Moreover, the Second Circuit Judicial Council on December 1, 1975 ordered that in all pending and future appeals involving state pris-

**1324**

pleaded guilty to second degree murder more than ten years ago, the essential issue is whether Judge Neaher correctly rejected petitioner's claims (1) of an involuntarily entered guilty plea, (2) of denial of effective assistance of counsel, and (3) of denial of right of allocution. We hold that Judge Neaher correctly rejected each of petitioner's claims and accordingly we affirm.

On June 7, 1965 petitioner Joseph Edward Francis Lunz, accompanied by counsel, pleaded guilty to second degree murder[2] before Justice Shapiro in the Queens County Supreme Court. On August 23, 1965 he was sentenced by Justice Shapiro to a term of twenty years to life. His conviction was unanimously affirmed by the Appellate Division on December 11, 1967. *People v. Lunz*, 29 App.Div.2d 631, 286 N.Y.S.2d 787 (2nd Dept. 1967) (mem.).

The New York Court of Appeals denied leave to appeal on July 1, 1968.

After exhausting his state remedies,[3] Lunz filed a petition for a writ of habeas corpus in the Eastern District of New York on January 28, 1974, from the denial of which by Judge Neaher in a well reasoned opinion filed March 26, 1975, and a judgment entered the same day dismissing the petition, the instant appeal has been taken.

I.

On June 7, 1965, prior to accepting Lunz' guilty plea to second degree murder, Justice Shapiro requested Lunz to tell him in his own words what he did on the day of the crime. He did so. Among other things, Lunz stated that he stabbed a Queens building superintendent to death with a letter

---

oners' petitions for writs of habeas corpus there should be eliminated from the caption the words which theretofore had preceded the name of the petitioner, i. e. "United States ex rel."

The caption in the instant case accordingly is amended to read as set forth above.

**2.** Lunz had been indicted on February 1, 1965 for first degree murder, to which he pleaded not guilty. At the change of plea proceedings before Justice Shapiro on June 7, 1965 Lunz withdrew his not guilty plea to the charge of first degree murder and was permitted to plead guilty to a charge of second degree murder.

**3.** Lunz filed three coram nobis petitions in the Queens County Supreme Court. The first such petition, in which he claimed that his guilty plea had been involuntarily entered, was denied by Justice Shapiro on February 19, 1970. The Appellate Division affirmed on June 14, 1971. *People v. Lunz*, 37 App.Div.2d 697, 323 N.Y. S.2d 654 (2nd Dept. 1971) (mem.).

The second coram nobis petition, in which he claimed denial of effective assistance of counsel as well as an involuntarily entered guilty plea, was denied by Justice Buschmann on April 25, 1972.

The third coram nobis petition, in which he raised substantially the same two claims as in his second petition, was denied by Justice Buschmann on June 13, 1973, after an evidentiary hearing.

We are informed by Lunz' counsel that leave to appeal to the Appellate Division and to the New York Court of Appeals was denied with

respect to the orders denying the second and third coram nobis petitions.

Lunz' denial of right of allocution claim, aside from having been raised in a motion for resentence which was denied by Justice Shapiro on September 29, 1969 (from which no appeal was taken), appears also to have been raised in a petition for a writ of habeas corpus filed in the Clinton County Supreme Court on April 16, 1970. This petition was denied by Justice Soden on May 16, 1970 on the ground that "[t]he issue raised by the petitioner at this time should properly have been raised in one of the prior Appellate Division proceedings (cf. *People ex rel. Keitt v. McMann*, 18 N.Y.2d 257)." The Appellate Division, Third Department, affirmed without opinion on March 4, 1971 (unreported). The New York Court of Appeals denied leave to appeal on May 12, 1971.

We are constrained to note our displeasure with the casual indifference of counsel *on both sides* of the instant appeal with respect to their duty to provide this Court with the relevant state court records to enable us to determine whether state remedies have been exhausted as required by 28 U.S.C. § 2254(b) (1970). Among indicia of the casual indifference which we criticize was the leaving of critical state court records *with a guard in the lobby of our courthouse* (records which consequently were long mislaid) and the furnishing to us of state court records regarding the denial of right of allocution claim *two months after the appeal was argued before us.* We think the Court deserves better of counsel.

opener after Lunz was caught in the act of robbing the building. It is the guilty plea that was accepted after this admission which Lunz seeks to have set aside in the instant habeas corpus proceeding.

In order to focus upon Lunz' claims, it is necessary to back up a bit and recount certain events of the preceding year or so.

Early in 1964 he pleaded guilty to grand larceny. He was sentenced as a youthful offender. This offense was unrelated to the instant offense.

In September 1964 he again was arrested and charged with grand larceny. On December 1, 1964 he was committed to the Kings County Hospital for a psychiatric examination. While in the hospital he was questioned by two detectives about the stabbing of the building superintendent.[4] According to Lunz, the detectives told him that they knew he had committed the murder; and that if he confessed he would not be prosecuted for that crime and they would arrange to have him transferred to a hospital of his choice. Lunz requested access to counsel during the questioning. It was refused. At first he denied any knowledge of or involvement in the murder. On the second day of questioning in the hospital, however, he made an oral confession which was tape-recorded. When requested to sign a written confession he refused and recanted his oral confession.

The detectives used Lunz' oral confession to obtain a confession from his co-conspirator, James Mannion. Based on Mannion's confession, a grand jury on February 1, 1965 indicted both Lunz and Mannion for first degree murder.

On February 10 the court assigned James P. McGrattan, Esq., a former County Court Judge, and James F. McArdle, Esq. to represent Lunz.

On February 17 the court ordered a psychiatric examination of Lunz to determine whether he was competent to stand trial. The examination was conducted at Kings County Hospital. The report of this examination concluded that, although Lunz was disturbed in some respects, he nevertheless was capable of understanding the charges against him and of assisting in his defense. Following a hearing on the psychiatric examination and report, the court on April 2 found that Lunz was competent to stand trial.

Thereafter his counsel urged him to plead guilty to second degree murder because of the strength of the State's case and to avoid the risk of a death sentence. At first Lunz refused.

On June 7, the day his case was to be called before Justice Shapiro, Lunz' sister was in the courtroom. She was in an advanced stage of pregnancy. She was there at the request of counsel for Lunz to persuade him to plead guilty to second degree murder. Justice Shapiro granted the request of defense counsel to permit Lunz to speak with his sister. Lunz did so. She became agitated and upset when Lunz told her he would not plead guilty. She begged him to do so to avoid being executed. Eventually, upon the urging of his counsel and his sister, Lunz decided to plead guilty to second degree murder. He claims that he did so because he did not wish to risk impairing his sister's health in view of her pregnancy.

When Lunz was presented for a change of plea, Justice Shapiro conducted what strikes us as an unusually careful voir dire examination to determine whether there was a factual basis for the plea and whether it was being entered voluntarily.[5] Im-

---

**4.** One of the detectives had questioned Lunz about the stabbing before he was hospitalized. Lunz denied any knowledge of the crime.

**5.** The colloquy between Justice Shapiro and Lunz prior to the change of plea on June 7, 1965 included the following:

"The Court: In other words, you say now to the Court that you desire to withdraw your plea of not guilty and plead guilty to the crime of murder in the second degree?
Defendant Lunz: Yes, sir.
The Court: You realize under that plea, if I accept it, that the penalty will be not less than twenty years. It may be more than twenty years and not less than life. You understand that?
Defendant Lunz: Yes, sir.

mediately after admitting that he had stabbed the building superintendent with a letter opener upon being caught in the act of robbing the building, Lunz responded to Justice Shapiro's question as follows:

> "THE COURT: Now, knowing everything that I have told you and knowing what the sentence may very well be and that the minimum, at any rate, is not less than twenty years, do you still say you desire to withdraw your plea of not guilty and plead guilty to the crime of murder in the second degree?
>
> DEFENDANT LUNZ: Yes, sir."

Justice Shapiro thereupon permitted Lunz to withdraw his not guilty plea to the charge of first degree murder and to plead guilty to second degree murder.

Two and a half months later, on August 23, 1965, Lunz was sentenced by Justice Shapiro to a term of twenty years to life. In view of his claim of denial of the right of allocution, discussed more fully below, we

> The Court: The law also requires me to tell you that if you have previously been convicted of a felony, the sentence in this case must be increased by reason of that fact. Do you understand that?
>
> Defendant Lunz: Yes, sir.
>
> The Court: Has anybody made you any promise? Judge McGrattan, Mr. McArdle, the District Attorney or anybody else made you any promise as to what my sentence in this case will be if I accept the plea?
>
> Defendant Lunz: No, sir.
>
> The Court: You have had no talk with me until just now, is that right?
>
> Defendant Lunz: That's right.
>
> The Court: And that's here in open court, is that right?
>
> Defendant Lunz: Yes."

**6.** The colloquy between Justice Shapiro, defense counsel and Lunz at the time of sentencing on August 23, 1965 included the following:

> "Court Clerk: Have you any legal cause to show why judgment of this Court should not be pronounced upon you?
>
> Mr. McGrattan: No.
>
> The Court: I'll hear you, sir.
>
> Mr. McGrattan: If your Honor pleases, I don't think any point would be served by any extended plea here. You have a report of this defendant's background. Whether it was his fault, partly his fault or possibly the fault of someone else, he left his home when he was fifteen years of age and got into trouble.

set forth in the margin the relevant portion of the sentencing minutes.[6]

## II.

Turning directly to Lunz' claim that his guilty plea was involuntarily entered, the controlling guidelines are set forth in *McMann v. Richardson,* 397 U.S. 759 (1970). There the Supreme Court held that the mere fact that a confession was coerced does not, without more, afford a basis for setting aside a guilty plea. On the record before us, we hold not only that Lunz' plea was voluntary but that there was a factual basis for it as well.

We reject out of hand Lunz' claim that his confession given to the detectives in the hospital was in reliance upon their promise that he would not be prosecuted for the crime of murder. Apart from the utter improbability of this story, Lunz' answers to Justice Shapiro's questions immediately prior to entry of the plea provide a suffi-

> I am acquainted with the position you have adopted—formulated since you became a member of the judiciary in not imposing heavy sentences.
>
> The Court: No choice here, Judge.
>
> Mr. McGrattan: I ask you not to make any exception here. You have a minimum and a maximum. I am going to ask you to impose a minimum sentence because I feel he's now nineteen years of age and there may be some possibility of rehabilitation after he serves his sentence.
>
> The Defendant: What do you mean 'sentence'?
>
> The Court: All right. The sentence of the Court—
>
> The Defendant: Wait a minute. Sentence for what? What are you, serious?
>
> The Court: Just keep still.
>
> The Defendant: What do you mean 'keep still'? Now I get sentenced in Manhattan court. I don't get sentenced here.
>
> The Court: Sentence of the Court—
>
> The Defendant: What do you mean 'sentence of the Court'?
>
> The Court: Sentence of the Court—
>
> The Defendant: Get the fuck out of here.
>
> (A scuffle then ensued between the defendant and court officers.)
>
> The Court: Sentence of the Court in this case is the defendant be committed to the Elmira Reception Center for an indeterminate sentence of not less than twenty nor more than life."

cient basis for the district court's finding that no such promise was made. In short, as Judge Neaher's opinion below makes clear, before Lunz was permitted to enter his guilty plea, Justice Shapiro's thorough voir dire examination established that Lunz knew he was going to prison, that he knew the term would be not less than twenty years, that he knew the term might be even longer because of his prior felony record, and that he knew, and unequivocally assured the court, that nobody had made any promises to him.

■ Nor do we find any merit in Lunz' claim that he was coerced into pleading guilty by pressure from his counsel and his sister. Advice—even strong urging—by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion. *North Carolina v. Alford*, 400 U.S. 25, 29–32 (1970); *Brady v. United States*, 397 U.S. 742, 757 (1970); *United States ex rel. Brown v. LaVallee*, 424 F.2d 457, 460–61 (2 Cir. 1970), *cert. denied*, 401 U.S. 942 (1971). This is especially so where, as here, an accused's life is at stake. As Judge Neaher aptly put it:

"Petitioner had already given a verbal confession to the two detectives and petitioner's co-conspirator, Mannion, had also confessed. With his life at stake, it certainly cannot be said under the circumstances that petitioner's choice was not free and rational or that it was 'coerced'

because prompted by advice received from those who stressed the risk involved in any other decision."

We agree.

### III.

■ Lunz also claims that he was denied the effective assistance of counsel by their failure to consult with him sufficiently at two stages of the state court proceedings: prior to the April 2, 1965 hearing to determine his competence to stand trial (including what he now asserts as the overlooking of a possible insanity defense); and prior to his change of plea on June 7, 1965. We disagree.

Our Court for a quarter of a century, going back at least to Judge Smith's seminal opinion in *United States v. Wight*, 176 F.2d 376, 379 (2 Cir. 1949), *cert. denied*, 338 U.S. 950 (1950), uniformly has adhered to stringent requirements for establishing a claim of ineffective assistance of counsel. See, e. g., *United States ex rel. Marcelin v. Mancusi*, 462 F.2d 36, and cases cited at 42 (2 Cir. 1972), *cert. denied*, 410 U.S. 917 (1973) (state prisoner's Sixth Amendment claim of ineffective assistance of counsel for failure to assert insanity defense rejected).

In the instant case Lunz' claim of ineffective assistance of counsel was the subject of his second and third coram nobis proceedings in the New York state courts, note 3 *supra*, in the latter of which he was accorded an evidentiary hearing.[7] Our examina-

---

7. The crux of Justice Buschmann's decision on this issue, after the evidentiary hearing, was set forth in his opinion of June 13, 1973:

"In the matter at hand the Court appointed two members of the bar in good standing, experienced and well known in their field. As Mr. Justice Shapiro pointed out in his coram nobis decision of February 19, 1970 in discussing the qualifications of these attorneys (page 2):

'Mr. McGrattan has been an assistant district attorney for more than 20 years, has prosecuted a great number of important cases in the former County Court of this County and has served as a County Court judge for a period of time. Mr. McArdle for the past 20 years has been engaged to a great extent in representing defendants in criminal cases and has tried a number of important

cases during that period and bears an excellent reputation as a trial lawyer.'

It may be noted that such reputation continues until the present day.

As to the representation of petitioner, the gist of his complaint is that they did not fully explore the question of sanity. The record shows this allegation to be without foundation. Both counsel clearly recognized the possibility of this defense. A sanity hearing was held: the issue litigated and the Court found petitioner competent to stand trial. Shortly thereafter, petitioner freely and voluntarily chose to plead guilty and must abide by the consequences of that choice. While petitioner has every right to speculate on the wrong road taken, and to consider what might have happened if he elected trial, such a possibility cannot in law impose a duty of foresight on his appointed counsel.

**1328**

tion of the record of the state court proceedings leaves us with the firm conviction that Lunz was not denied his constitutional right to the effective assistance of counsel. We agree with the district court that there was no need to hold a further hearing on the matter. 28 U.S.C. § 2254(d).

## IV.

Finally Lunz claims that he was denied the right of allocution at the time sentence was imposed on August 23, 1965. Specifically he asserts that he was denied due process when Justice Shapiro said to him at the time of sentencing, "Just keep still." Note 6 *supra*. Again we disagree, viewing in context what took place at the sentencing proceedings as well as at the change of plea proceedings.

As Judge Neaher noted in his opinion below, the Supreme Court held in *Hill v. United States,* 368 U.S. 424, 428 (1962):

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' *Bowen v. Johnston,* 306 U.S. 19, 27."

An attorney must act on the facts presently before him and, in this case, assigned counsel had to balance the merits of an uncertain defense against the real dangers of capital punishment. Under the circumstances, a negotiated plea could not be deemed an abandonment of the defendant's interests but rather a valid courtroom representation.

Therefore, taking all the facts of this case into consideration and evaluating the credible testimony of the witness in this hearing, this court finds that this is not 'one of those rare cases in which the representation of a defendant by his assigned counsel was so inadequate and ineffective as to deprive him of a fair trial.' (*Peo-*

True, the Supreme Court in *Hill* indicated a distinction between failure to ask an accused whether he had anything to say and cutting him off from saying something. Whether the latter constitutes denial of due process was left open in *Hill.* On the record before us, we hold that Lunz was not denied due process.

The sentencing colloquy, note 6 *supra,* must be considered in the light of Lunz' answers to Justice Shapiro's questions during his careful voir dire examination before Lunz' guilty plea was accepted. Note 5 *supra.* In view of Lunz' admissions at that time, his undoubted knowledge of the crime to which he was pleading guilty and his understanding of the extent of punishment which would be imposed, the surprise he expressed on the day of sentencing that he was being sentenced at all appears to have been feigned. We hold that Justice Shapiro was fully justified in thinking that Lunz was simply endeavoring to interrupt orderly proceedings, particularly since his counsel had already spoken on his behalf.[8]

We have considered carefully all of Lunz' claims of error and find them to be without merit.

Affirmed.

*ple v. Bennett* [29 N.Y.2d 462, 280 N.E.2d 637, 329 N.Y.S.2d 801 (1972)])."

**8.** As appears from our summary of Lunz' exhaustion of state remedies, note 3 *supra,* it is a close question whether the exhaustion requirement has been satisfied with respect to his claim of denial of right of allocution, even in light of the state court habeas corpus records furnished to us two months after the argument. We nevertheless have resolved this issue by assuming that state remedies have been exhausted, preferring to rest our decision on the merits in view of the clarity of the state court sentencing and change of plea records.