The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Steven Patrick ADAMS, Defendant–
Appellant.

No. 90CA1290.

Colorado Court of Appeals,
Div. V.

Dec. 19, 1991.

Rehearing Denied Feb. 20, 1992.

Certiorari Denied Aug. 10, 1992.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda M. Davison and Katherine Clark, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Charles R. Greenacre, Montrose, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Steven Patrick Adams, appeals from the trial court's order denying his motion to withdraw his guilty plea. We affirm.

Defendant, two other men, and a woman were in defendant's mobile home when one of the men was shot and killed with a pistol owned by defendant.

Defendant and the woman left and drove approximately 15 miles before telephoning the state patrol to report the shooting. In a taped conversation with the state patrol, defendant stated that he shot the victim while the victim was attempting a burglary. The woman, however, later advised officers that defendant shot the victim because of jealousy.

Defendant later gave two other versions of the shooting, one in which he claimed to have shot the victim in self-defense and one in which the woman allegedly shot the victim. Defendant's explanation for his first two statements was that he wanted to protect the woman. At some point, the woman was granted immunity by a prosecutor.

Defendant was charged with first degree murder, attempted first degree murder, assault in the second degree, and complicity as an accessory after the fact.

Even though defendant's monthly income exceeded the guidelines for appointment of free legal counsel, he completed an application and obtained letters from three private attorneys to prove that he could not pay for their services. Consequently, the county court appointed a private attorney to represent defendant.

Defendant was not satisfied with the services of private counsel. The court then appointed an attorney from the public defender's office who specializes in and has extensive experience in defending serious felony charges. A thorough investigation was conducted by an investigator for the public defender's office, and the case was set for a preliminary hearing.

Prior to the preliminary hearing, a written plea bargain was offered by the prosecution and ultimately accepted by defendant. As pertinent here, defendant agreed to plead guilty to the accessory charge in exchange for dismissal of the other charges and a sentence not to exceed four years. The sentence was to be served either in a community corrections facility or on probation.

The court approved the plea agreement. A providency hearing was conducted and, based upon the written plea agreement and defendant's responses to the court's inquiry, the court determined that the plea was voluntary. The court then scheduled a sentencing hearing.

During the course of the sentencing hearing, however, defendant determined that the court intended to sentence him to community corrections. Consequently, he protested and asked to withdraw his guilty plea. The court advised defendant to file a

formal motion and informed him that his request would be then considered.

The court imposed a four-year sentence to a community corrections facility. Defendant later filed a formal motion to withdraw his plea and represented himself at the hearing on the motion. Defendant did not testify. Following presentation of other evidence and argument, the court entered a written order denying the motion.

I

■ Defendant contends that the trial court erred in failing to appoint an attorney to represent him at the hearing on his motion to vacate his plea. We disagree.

■ The initial burden to establish indigency is upon the defendant, and this burden requires defendant to establish the lack of funds, on a practical basis, to retain counsel. *Nikander v. District Court*, 711 P.2d 1260 (Colo.1986). In order to implement resolution of issues pertaining to appointment of counsel, the Chief Justice of the Colorado Supreme Court issued Directive 89–3 on October 19, 1989, establishing indigency guidelines.

As pertinent to this case, paragraph II A of the Directive provides:

1) All persons claiming to be indigent and asking for court appointed counsel *must* complete an application Form JDF208, *signed under oath*, which shall be reviewed by the court.

3) When the income of the person exceeds the eligibility guidelines, the court may, after conducting a hearing concerning the persons financial situation, find the person indigent ... Such finding *shall not* be made unless it is established that at least two attorneys will not provide legal services because the person is unable to pay their fee. (emphasis supplied)

Here, by letter, defendant initially requested appointment of counsel, specifying that he would not accept either the private attorney originally appointed to defend him or any attorneys in the public defender's office. The court promptly responded by letter advising defendant that it could not make an appointment based upon the letter alone. Enclosed with the letter, was an application form, and the court advised defendant that the application must be completed and returned.

However, the application form was not completed or returned. Instead, a few days later defendant contacted the court by telephone to discuss appointment of counsel. Defendant did not indicate his exact income in that conversation, but he confirmed that his income was over the guidelines. Nevertheless, he stated that he could not afford an attorney. The court encouraged defendant, at least, to discuss the case with an attorney to establish the cost for representation and then to seek qualification for partial indigency. Defendant failed to pursue this course of action as well.

On the date of the hearing, and prior to presentation of evidence, the court noted the correspondence and the contents of the telephone conversation. The court noted that defendant was present without counsel, and that defendant could proceed as he deemed appropriate. The court reminded defendant that the risk of proceeding without counsel was discussed in their telephone conversation, and defendant made no comment.

Under these circumstances, we are unable to conclude that defendant met his initial burden of establishing that, on a practical basis, he could not afford counsel. *See Nikander v. District Court, supra.*

Contrary to defendant's contention, and in light of the requirements contained in Directive 89–3, the court properly declined to rely upon defendant's unverified statements, made in his application for probation, as representing an accurate financial disclosure. Conversely, the fact that three attorneys declined to defend the homicide charges, on the basis of defendant's financial status approximately five months earlier, was not determinative of whether counsel could be obtained by defendant for purposes only of the hearing on his motion.

■ In addition, the record confirms that defendant was cognizant of and elected not

to pursue the procedure for establishing a current need for free legal services. Finally, defendant does not controvert the court's statement on the record that he was advised of the risks of proceeding without counsel.

Under these circumstances, we find no error in the court's determination that defendant waived his right to counsel. *See King v. People*, 728 P.2d 1264 (Colo.1986).

## II

■ Defendant next contends that the trial court erred in declining to set aside his plea. He reasons that he was coerced by defense counsel into accepting the plea disposition offered by the prosecution. We conclude that the trial court did not commit reversible error in denying defendant's motion.

■ Defendant carried the burden of establishing a "fair and just reason" for withdrawing his plea *prior to* imposition of sentence. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981). And, to warrant the exercise of discretion favorable to a defendant concerning a change of plea, it must be shown that a defendant may have been influenced to enter a guilty plea when having a defense, or that defendant's plea was entered through fear, fraud, or official misrepresentation, or that the plea was made involuntarily for some reason. *People v. Chavez*, 730 P.2d 321 (Colo.1986). Finally, resolution of this issue is addressed to the sound discretion of the trial court, and we may not overturn its decision absent an abuse of that discretion. *People v. Chippewa*, 751 P.2d 607 (Colo.1988).

Here, defendant relies principally upon two tape recorded conversations he had with different attorneys from the public defender's office. One of the conversations was taped both by defendant and counsel. The conversation was the result of complaints made by defendant's parents to the public defender's office regarding defendant's legal representation. The second conversation was taped only by defendant, without disclosing to counsel that the conversation was being recorded. Appar-

ently, because of a mechanical defect, only part of the conversation was recorded.

The transcripts reflect that counsel used strong and profane language in discussing defendant's failure to abide by counsel's admonition not to discuss the case with a critical witness (who recorded her conversation with defendant) and with law enforcement personnel. Similar language was used in discussing the prosecution's proffered plea bargain, the possibility that he would be convicted of first degree murder, the probability that defendant would receive a prison sentence for conviction of any of the charges if he did not accept the plea bargain, and the treatment defendant would receive in prison.

While the type of language used strikes us as inappropriate, the testimony of both attorneys stands unrebutted that this type of language was used by defendant. Moreover, it is uncontradicted that use of this language was necessary to assure that defendant understood their concerns about his view that he would be acquitted of all charges at trial.

■ Competent advice of counsel, albeit stated in strong language, does not constitute coercion standing alone. *See Lunz v. Henderson*, 533 F.2d 1322, (2d Cir.1976); *Williams v. Chrans*, 742 F.Supp. 472 (N.D.Ill.1990). And, the duty of defense counsel, after conducting a thorough investigation, is to discuss the case with complete candor and to offer the best estimate possible as to the outcome. *See People v. Riley*, 187 Colo. 262, 529 P.2d 1312 (1975).

■ A more difficult issue is posed by counsel's oft repeated predictions that defendant might be killed in prison, that he might "wish he were dead" after spending some time there, and that he would be sexually assaulted there. Defendant contends that these comments constitute a form of coercion which warrant setting aside the plea. We conclude to the contrary.

In addressing this contention, we first note that defendant, at one point, acknowledged in the recorded conversation that he

did not doubt counsel's assessment that he was not "tough enough" for prison. We also note that counsel's testimony at the motion hearing was uncontroverted. He explained, in effect, that most suspects charged with first degree murder are held in some form of awe and are feared by other inmates. However, defendant had unspecified problems shortly after being taken into custody which were of great concern to counsel.

■ Finally, we note that defense counsel is not restricted to discussing the probable outcome of a case in discussing the propriety of a plea bargain. *See* 3 ABA, *Standards for Criminal Justice*, Standard 14–3.2 (2d ed. 1986).

■ Furthermore, even if we were to hold that these comments exceed the parameter of counsel's proper role of persuasion, we would, nevertheless, conclude that the trial court did not err in denying defendant's motion.

It is uncontroverted that defendant was represented by experienced and competent counsel. In the initial recorded conversation, counsel advised defendant that any decision to accept a plea bargain was solely his decision. Also, there is overwhelming record support for the proposition that acceptance of the plea bargain was in defendant's best interest, that his claimed defense to the accessory charge was specious, and that the probability of his receiving a prison sentence was very great if the bargain were rejected. Indeed, at the hearing on his motion, defendant, in effect, conceded that he was an accessory.

Still more persuasive to us is the record of the providency hearing itself. Before the hearing, and after discussing the proposed written plea with counsel, defendant signed a "petition to plead guilty" which explained, among other things, the effect of a guilty plea to the accessory charge, the plea bargain, and the rights being waived. The petition also confirmed that defendant was satisfied with his legal representation and that "no one has used any undue influence, threats or promises of leniency, favors or special consideration to get me to plead guilty against my will."

During the hearing, the court again explained the information set forth in the petition, and defendant confirmed, in his responses to questions from the court, that he understood the plea bargain, that he was satisfied with the services of counsel, and that he was not coerced to enter his plea. Conversely, there is ample record support for the court's finding that defendant was not promised probation. However, as noted, defendant did not request that his plea be changed until comments by the court, at the conclusion of the sentencing hearing, confirmed that the sentence would be to a community corrections facility.

Under these circumstances, we are unable to conclude that the trial court erred in denying defendant's motion.

The order is affirmed.

REED, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

In my view, the guilty plea was rendered involuntary by the repeated warnings of defendant's counsel that, if defendant was convicted after a trial and sentenced to the penitentiary, he would be repeatedly sodomized and then murdered.

A guilty plea must be entered voluntarily and with proper understanding. *People v. Wells*, 734 P.2d 655 (Colo.App.1986). A guilty plea is involuntary if it is induced by threats. *People v. McClellan*, 183 Colo. 176, 515 P.2d 1127 (1973). Also, a plea may be rendered involuntary by mental as well as physical coercion. *See Pickens v. United States*, 427 F.2d 349 (5th Cir.1970).

A guilty plea is void if shown to be actuated by misleading statements of counsel. *Heideman v. United States*, 281 F.2d 805 (8th Cir.1960). Further, a guilty plea resulting from false advice from counsel as to the sentence that would be imposed may be set aside as having been unlawfully coerced. *United States v. Simpson*, 436 F.2d 162 (D.C.Cir.1970).

Absent explicit instructions from his client to the contrary, defense counsel should normally pursue the alternatives to a trial that exist within a case, *i.e.*, dismissal, plea bargain. Furthermore, if counsel receives a plea offer from the district attorney, he is obligated to inform his client both of the offer and his opinion of it. In some cases, defense counsel may refrain from making a recommendation as to whether defendant should accept the plea bargain. In other situations, defense counsel may conclude that the defendant should accept the district attorney's plea offer.

Here, counsel concluded that the only viable choice for defendant was to accept the plea offer to accessory after the fact of murder. From this record, it appears there were compelling reasons for defense counsel to reach this conclusion and make the recommendation that he did.

Nevertheless, the decision to accept a plea offer belongs solely to the defendant. While counsel may make his position known to defendant in forceful, clear, and certain terms, he cannot cross the line and coerce a defendant into accepting a guilty plea. *Cf. People v. Gies,* 738 P.2d 398 (Colo.App.1987).

Here, counsel repeatedly told defendant that if he went to trial he would be convicted and sentenced to prison and that once in prison, he would be repeatedly sodomized and then murdered. Because I believe that these repeated "threats" about what defendant would face in prison rendered defendant's plea involuntary, I conclude that the trial court erred in not setting aside the plea.

I recognize that accurately informing the defendant of the potential hazards of incarceration is a legitimate and responsible act of counsel in advising his client about the implications of a plea or trial. But, here, defense counsel went far beyond merely informing defendant of the hazards of incarceration; he repeatedly and definitively predicted that defendant would be sexually assaulted and killed. These warnings went far beyond a legitimate informational advisement and recommendation and constituted threats and coercion.

Among counsel's remarks that were beyond the scope of appropriate advice are the following.

So you're not tough enough for prison. You're just not tough enough for prison. That's all there is to it. So that any prison sentence is most probably for you a death sentence or very close. Because things would happen to you in prison that would cause you to wish you were dead or want to kill yourself. So, that's why, you know, you have to understand the risks.

. . . .

It is my opinion that in the two years or four years or whatever it is, awaiting for the appellate court to decide [your case] that you'll be *dead.* You won't make it through prison. Ok.

. . . .

And it won't do you any good because you'll be dead or your [anus] will be the size of a dinner plate ... a jury can say 'you know, I'm not convinced anyone of them is telling the truth, but I believe beyond a reasonable doubt that Steven Adams committed second degree murder.' Ok. Then you go to prison and you're *dead.*

. . . .

The judge says you're going to prison and away you go. And you're *dead.* Because you're not tough enough or you're going to wish you were dead.

. . . .

If we won appeal, you wouldn't be worth a s..t if you came out of it alive. Ok?

. . . .

I will feel bad if you get convicted of accessory after the fact of manslaughter and go to prison and *die,* I will be able to say I told you so. Right?

Furthermore, there was another earlier conversation with another public defender in which similar representations concerning defendant's death were made.

Here, defendant was a young man, age 26, who had never been in the penitentiary and was dependent on the representations of his counsel to assess what prison would be like. In such circumstances, the "brow-beating" indulged in by counsel went far beyond just advising defendant of the dangers within the institution and, indeed, in my view became coercive.

The majority appears to give great weight to the fact that at the time of his plea, defendant acknowledged the elements of the offense and stated his plea was voluntary. However, by pleading to the elements of the offense and indicating that he has not been coerced, defendant may have been merely providing the "right" answers to the trial court to effectuate the coerced plea. Certainly, this does not mean defendant has not been coerced. *See People v. Cole,* 39 Colo.App. 323, 570 P.2d 8 (1977), *aff'd in part, rev'd in part,* 195 Colo. 483, 584 P.2d 71 (1978). *See also United States v. Cowin,* 565 F.2d 548 (8th Cir.1977) and *United States v. Tateo,* 214 F.Supp. 560 (S.D.N.Y.1963).

If, as suggested by the majority, counsel's predictions of defendant's life in prison are not coercive because, *inter alia,* defense counsel accurately described defendant's future plight in the penitentiary, then a far graver problem is presented. If young men who have not been previously incarcerated face repeated sexual assaults and murder as part of their sentence to the penitentiary and, in an effort to avoid these assaults, enter guilty pleas to crimes they did not commit, then the constitutionality of the criminal justice system and the penal system are in doubt. Not only does the threat of criminal violence impermissibly coerce defendant in violation of his constitutional rights, but the operation of a penal system where such violence is rampant is also unconstitutional. *See Ramos v. Lamm,* 485 F.Supp. 122 (D.Colo.1979); *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.1975) (the Eighth Amendment may require a classification system which separates inmates according to offense and physically aggressive tendencies).

Finally, I believe it is of great significance that defendant moved to withdraw his guilty plea prior to being sentenced.

In my opinion, absent a showing of detrimental reliance by the district attorney in response to defendant's guilty plea, *i.e.,* loss of witnesses or evidence, a defendant should be freely and liberally permitted to withdraw a guilty plea prior to sentencing. *See United States v. King,* 618 F.2d 550 (9th Cir.1980); *United States v. Hamm,* 659 F.2d 624 (5th Cir.1981).

A defendant has a constitutional right to have the prosecution prove each element of the offense beyond a reasonable doubt against him. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). And, an accused's exercise of that right by insisting upon a trial should be freely permitted, both for the benefit of the individual and for the viability of the criminal justice system itself.

Accordingly, I would reverse the judgment and remand for trial on all charges.