**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1268

———————

UNITED STATES OF AMERICA

v.

MARCUS AKIEM RICKETTS,
                                                     Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:13-cr-00060-001)
District Judge:  Honorable Mitchell S. Goldberg

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on September 10, 2024

Before:  CHAGARES, <u>Chief Judge</u>, ROTH and RENDELL, Circuit Judges

(Opinion filed: April9, 2025)

———————

OPINION*

———————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Marcus Akiem Ricketts appeals the District Court's order dismissing his motion to vacate his sentence and conviction under 28 U.S.C. § 2255. Ricketts contends that he received ineffective assistance of counsel and his guilty plea was involuntary because his counsel solicited emotional pleas from family members and friends to coerce him to accept a plea deal. Because we find that Ricketts' counsel was not deficient and his plea was voluntary, we will affirm the District Court's order.

I.

On September 5, 2013, a federal grand jury indicted Ricketts on four counts of armed bank robbery under 18 U.S.C. § 2113(d) and four counts of using and carrying a firearm during a crime of violence under 18 U.S.C. § 924(c)(1). Under the law at the time, Ricketts' four § 924(c) charges alone required a mandatory minimum sentence of 82 years. Such a sentence would amount to life in prison for Ricketts, who was then 37 years old.

Before the court appointed attorney Maria Pedraza to his case, under different representation, Ricketts gave two damning admissions to authorities: (1) that he robbed an M&T Bank on July 2, 2012, and (2) that he committed eleven armed bank robberies. The evidence against Ricketts was substantial. Pedraza and the government engaged in

plea negotiations, which resulted in the government's final offer of 25 years.[1] Ricketts found the government's offer not only unreasonable but also "outrageous."[2]

A week before trial, Ricketts indicated at a status hearing that he intended to go to trial. With Ricketts' consent, Pedraza spoke to Ricketts' mother and arranged for family members and friends to write emails to him. While Pedraza characterized the request as a way to encourage and show support for Ricketts, Ricketts' mother said the purpose of the emails was to "persuade him to take the deal."[3] Ricketts maintains that by the morning of the trial on June 3, 2014, he had not changed his mind. Pedraza facilitated a private meeting between Ricketts and his mother that he described as "very emotional" and "upsetting."[4] After reading the emails and speaking to his mother, Ricketts decided to plead guilty. During his plea colloquy, Ricketts swore under oath that he understood the plea agreement, no one forced or threatened him to sign it, and that he agreed to plead guilty "voluntarily and of [his] own free will."[5] Three months later, the District Court sentenced Ricketts to 300 months (25 years) and one day in prison.

It was not until Ricketts took a legal course in prison that he began to question the voluntariness of his plea. After the District Court granted Ricketts an extension, he filed a pro se motion under § 2255 to vacate, set aside or correct his sentence based upon four grounds of ineffective assistance of counsel, including one that his plea was coerced.

---

[1] With good time credit, Ricketts could be released after serving about 21 years and four months of his sentence.
[2] JA 168a, 213a.
[3] JA 255a.
[4] JA 236a–37a.
[5] JA 92a–95a.

After holding an evidentiary hearing, the District Court denied Ricketts' motion but issued a certificate of appealability as to his coercion claim because the court was unable to find "any controlling authority factually similar to what occurred" in Ricketts' case.[6] Ricketts appealed.[7]

## II.

We "exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings."[8] As established in *Strickland v. Washington*, to prevail on an ineffective assistance of counsel claim, a movant must show that: (1) "counsel's performance was deficient[,]" that is, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment"; *and* (2) "the deficient performance prejudiced the defense" in such a way that "counsel's errors were so serious as to deprive the defendant of a fair trial . . . whose result is reliable."[9] When a defendant is represented by counsel and enters a plea on counsel's advice, voluntariness is assessed by examining whether the advice "was within the range of competence demanded of attorneys in criminal cases."[10]

Given Ricketts' prior admissions to law enforcement, the extensive evidence against him, and what amounted to a mandatory life sentence if he was convicted at trial,

---

[6] JA 2a, 19a–20a.

[7] The District Court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We exercise jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a).

[8] *United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997)).

[9] 466 U.S. 668, 687 (1984).

[10] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)).

counsel's efforts to encourage Ricketts to accept the plea deal were no doubt reasoned and within "the range of competence" expected of criminal defense attorneys.[11] Nor was it improper or uncommon for counsel to implore the help of Ricketts' family members.

While we have yet to make an ineffective assistance of counsel determination on similar facts, the Second Circuit has rejected coercion claims where counsel sought the assistance of the defendant's family members to urge him to accept a plea deal.[12] In *Lunz v. Henderson*, the court held that "[a]dvice[,] even strong urging by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion."[13] Similarly, the First Circuit rejected a defendant's claim that he was coerced into pleading guilty after an emotional conversation with his mother, noting that in a criminal prosecution, it is expected that "loved ones will advise, counsel, implore, beseech, and exhort defendants to take—or abjure—myriad courses of action"; that a defendant received input from family members before entering a plea "does not necessarily show coercion, duress, or involuntariness."[14]

The same applies here. Ricketts concedes that his mother, family, and friends urged him to take the plea so that he could have a life outside of prison. In doing so, they did not threaten him in any way. This is strong persuasion, not coercion. Confronted with the strength of the government's case against her client, Pedraza acted appropriately

---

[11] *See id.*
[12] *See Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976); *United States ex rel. Brown v. LaVallee*, 424 F.2d 457, 460–61 (2d Cir. 1970).
[13] 533 F.2d at 1327 (citations omitted).
[14] *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989).

to encourage Ricketts to take the only course of action that would avoid a life sentence. As the District Court noted, "[a] lawyer does not deprive a client of autonomy by 'explaining why, in her view, conceding guilt would be the best option.'"[15] We agree with the District Court that Ricketts' plea was not coerced and will therefore affirm the order dismissing his § 2255 petition.

---

[15] JA 19a (quoting *McCoy v. Louisiana*, 584 U.S. 414, 423 (2018)).