23CA1475 Peo v Martinez 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1475
Gilpin County District Court No. 14CR37
Honorable David C. Taylor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kenny Lee Martinez,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Kenny Lee Martinez appeals the postconviction court's order denying his Crim. P. 35(c) motion after an evidentiary hearing. We affirm.

## I.    Background

¶ 2    In 2014, while staying in a hotel in Black Hawk, Martinez pinned his wife — the victim — down, choked her, and told her that he was going to kill her. The victim escaped and reported the assault to hotel security. Police and medical personnel arrived and saw red marks and swelling on the victim's neck, along with other injuries.

¶ 3    Though Martinez denied being "involved in any altercation," the prosecution charged Martinez with attempted second degree murder, second degree assault with a deadly weapon, and multiple related counts.

¶ 4    On the second day of trial, the court reported that one of the jurors was sick and could not continue serving. After conferring with his counsel, Martinez elected to proceed with eleven jurors. The jury convicted Martinez on all counts. The court imposed a

controlling twenty-eight-year prison sentence to be served concurrently with his sentence in a separate Denver case.[1]

¶ 5    A division of this court affirmed the judgment of conviction, *People v. Martinez*, slip op. at ¶ 53 (Colo. App. No. 15CA0632, July 27, 2017) (not published pursuant to C.A.R. 35(e)), and the mandate issued in 2018.

¶ 6    In 2021, Martinez filed a motion for postconviction relief under Crim. P. 35(c) alleging ineffective assistance of counsel. The court appointed postconviction counsel who filed two supplemental motions alleging, among other claims, that trial counsel coerced Martinez to proceed with eleven jurors and that trial counsel was ineffective for failing to obtain an allegedly exculpatory hotel surveillance video.[2]

---

[1] After successfully challenging the legality of his twenty-eight-year sentence, the court resentenced Martinez to twenty-two years.

[2] Because Martinez reasserts only two postconviction claims, we deem abandoned the remaining postconviction claims asserted in either Martinez's Crim. P. 35(c) motion or the supplemental motions filed by postconviction counsel. *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (a defendant's failure to specifically reassert on appeal a claim that the postconviction court denied constitutes a "conscious relinquishment" and abandonment of the claim).

¶ 7    The postconviction court set an evidentiary hearing. At the hearing, Martinez testified that he had asked trial counsel to get a hotel surveillance video that he said showed the victim kicking in the door to their hotel room the night before the assault, but that counsel did not get the video. And he testified that he did not want to waive his right to a twelve-person jury, but trial counsel "coerced" him to make the decision "with a coin toss." Martinez said that the coin toss was trial counsel's idea, and after he "lost the coin toss," Martinez proceeded with eleven jurors.

¶ 8    Regarding the alleged hotel surveillance video, Martinez's trial counsel testified that he had instructed his investigator to "try to subpoena" video from the night before the assault but that the hotel was "not able to provide any surveillance footage." And while some evidence showed that a hallway camera may have been present in 2014, no evidence was presented that the camera would have captured the recessed doorway or that any exculpatory video existed.

¶ 9    As to the decision to proceed with eleven jurors, both lead and co-counsel testified. They described conferring with Martinez and that Martinez struggled with whether to waive a twelve-person jury.

Lead counsel testified that he advised proceeding with eleven jurors under the circumstances. Specifically, he testified that he advised Martinez that, in his professional opinion, a mistrial would probably result in a trial before a different judge, and, based on lead counsel's personal experience, the new judge would be more likely than the current judge to impose any sentence in this case consecutive to Martinez's sentence in the Denver case. Lead counsel testified that Martinez "wasn't interested" in taking his advice; Martinez "insisted on doing a coin toss" and, "having no coin, [they] ended up tossing a [s]ticky [n]ote [p]ad." Lead counsel confirmed that the coin toss was Martinez's idea, and that he thought it was "crazy" that Martinez would not take his advice and instead "would do a coin toss" to make that decision. Lead counsel testified that whether to proceed or pursue a mistrial was "100 percent [Martinez's] choice."

¶ 10    The People asked the postconviction court to take judicial notice of the record, which included a transcript of the trial court's advisement to Martinez that he had a right to twelve jurors and that the court would grant a mistrial if Martinez did not want to proceed with eleven jurors. After Martinez conferred with his attorneys and

4

had the "coin toss," the court and Martinez had the following

exchange:

> Court: I don't want to get into the
> conversations you had with your attorneys.
> It's your choice on what you want to do.  You
> should get their advice[,] . . . but, ultimately,
> you can accept or reject their advice.  The
> decision is yours.
>
> Martinez: So if I decide I try to get a mistrial,
> how long would the case be for?
>
> Court: If you want a mistrial, I will grant that.
> So I'll tell you that right now.  I can't force you
> to proceed with eleven jurors.  So the question
> is whether you'll proceed with eleven jurors or
> whether there will be a mistrial.  So those are
> the two options first.  The case has to be set
> within [ninety] days. . . .  So today is November
> 19.  We would probably be looking at the trial
> dates that we had in January and February.
>
> Martinez: Yeah.  I'll proceed, Your Honor.
>
> Court: You want to proceed today with eleven
> jurors?
>
> Martinez: Yes.
>
> Court: Is that your own decision?
>
> Martinez: Well, talking to my attorneys and
> everything, they think it's the right decision.
>
> Court: Sir, it has to be your decision.  You get
> to decide this.

> Martinez: We'll proceed, Your Honor.
>
> Court: Do you want to proceed with eleven jurors?
>
> Martinez: Yes.
>
> Court: And is that your own decision?
>
> Martinez: Yes.

¶ 11    In a detailed written order, the postconviction court denied Martinez's Rule 35(c) motion. The court found that all the witnesses — except Martinez — were credible.

## II.    Discussion

¶ 12    Martinez contends that the postconviction court erred by denying his claims that (1) trial counsel was ineffective by failing to obtain allegedly exculpatory video surveillance footage and (2) counsel coerced him into proceeding with eleven jurors. We disagree.

### A.    Legal Principles and Standard of Review

¶ 13    "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was

6

deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant, meaning that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1061-63 (Colo. 2007). A postconviction court may reject an ineffective assistance claim if the defendant fails to demonstrate either deficient performance or prejudice. *See People v. Duran*, 2025 COA 34, ¶ 16.

¶ 14 If a postconviction court denies a Rule 35(c) motion after an evidentiary hearing, we defer to the court's credibility determinations and factual findings if they are supported by the record. *See Dunlap*, 173 P.3d at 1061-63; *People v. Hardin*, 2016 COA 175, ¶ 39.

¶ 15 We may affirm the denial of a postconviction motion for any reason supported by the record. *People v. Taylor*, 2018 COA 175, ¶ 8.

## B. Hotel Surveillance Footage

¶ 16 Martinez maintains that the postconviction court erred by denying his claim that his trial counsel was ineffective for failing to

obtain hotel surveillance footage that purportedly showed the victim kicking in their hotel room door the day before he assaulted her.

¶ 17   But the record supports the postconviction court's findings that no evidence was presented that — even assuming there was a hallway security camera in place in 2014 — the camera "recorded anything of exculpatory value." Indeed, no witness testified about the hotel's 2014 video surveillance system, the location of any hallway security cameras at that time, and if there was a hallway security camera, the scope of its coverage. While the hotel's director of security and surveillance opined that he "believe[d]" based on "conversation" with "other people" that there was a hallway security camera "in the general area" in 2014, he admitted that he "couldn't speak to if there was a camera or not because [he] wasn't" employed at the hotel in 2014. And even as to the hallway security camera in place at the time of the evidentiary hearing, the director of security testified that he didn't know whether it "would capture activity outside" of Martinez's hotel door because of "the way that the door is recessed."

¶ 18   A defense investigator similarly opined that although he "believe[d]" the current hallway security camera would capture

something outside the door, he admitted he did not know if any camera was in place in 2014 and could not "testify to anything from 2014." Thus, even if we assume the hotel had a hallway security camera in 2014, Martinez presented no evidence about the scope of coverage and specifically whether it would have captured anything outside his hotel room door.

¶ 19 We are also unconvinced that Martinez satisfied his burden to demonstrate deficient performance. After all, trial counsel testified that he instructed his investigator to obtain the surveillance video and the evidence showed that the investigator tried to obtain such a video. And while counsel could not say when the subpoena for the surveillance video issued, he testified that he would have sought the surveillance footage in a timely manner. The postconviction court credited trial counsel's testimony.

¶ 20 By contrast, Martinez presented no evidence showing that trial counsel did not make a timely request for the surveillance footage. Nor did the evidence establish when the subpoena was issued and, as already discussed, whether any hallway surveillance video was even available in 2014. Thus, we cannot conclude that the evidence presented overcame the strong presumption that trial counsel's

actions fell within an objective standard of reasonableness. *See Ardolino*, 69 P.3d at 76.

¶ 21  We therefore affirm the postconviction court's denial of this claim.

### C.  Proceeding with Eleven Jurors

¶ 22  Martinez argues that the postconviction court erred by finding that he voluntarily waived his right to a twelve-person jury. Martinez persists in his claim that his trial counsel coerced him into proceeding with eleven jurors. Although the postconviction court offered several reasons for rejecting this contention, we agree that the record supports the court's finding that trial counsel did not coerce Martinez and affirm on that basis.

¶ 23  A defendant in a felony case may waive his constitutional right to a twelve-person jury. *See People v. Taylor*, 2021 COA 133, ¶¶ 29-30; *see also* Crim. P. 23(a)(7) (setting forth circumstances under which a defendant may stipulate to fewer than twelve jurors).

¶ 24  Relying on his own testimony and a deputy sheriff's notarized statement, Martinez insists that trial counsel coerced him into "a coin toss," that counsel's actions were aggressive and belittling, and that counsel "threatened" to withdraw if there was a mistrial. The

notarized statement simply confirmed there was a "coin toss," which no one disputed. The statement said nothing about coercive conduct or who suggested the "coin toss." That left only Martinez's testimony that trial counsel coerced him into the coin toss and waiving his right to a twelve-person jury. But the court rejected Martinez's testimony, finding it not credible.

¶ 25    The court instead expressly credited trial counsel's testimony. And lead counsel testified that whether to proceed with eleven jurors was "100 percent" Martinez's choice. Trial counsel agreed that he forcefully expressed his professional opinion that Martinez should proceed with eleven jurors. And trial counsel explained the basis of that opinion — that he had concerns about the possibility of a harsher sentencing judge if there was a mistrial. Martinez does not dispute that trial counsel's sentencing concerns were appropriate and legitimate.[3] And even if trial counsel expressed his opinion forcefully, "[c]ompetent advice of counsel, albeit stated in

---

[3] Lead counsel's advice that Martinez should continue with eleven jurors was based on his belief that Martinez potentially faced consecutive sentences with a new judge. As lead counsel predicted, the judge who sentenced Martinez ran the sentence concurrent to Martinez's sentence in the Denver case.

strong language, does not constitute coercion standing alone." *People v. Adams*, 836 P.2d 1045, 1048 (Colo. App. 1991). In any event, trial counsel testified that Martinez was not interested in his advice and instead insisted on a "coin toss" to make the decision. Because the postconviction court credited this testimony, we will do the same.

¶ 26    Martinez also generally asserts that he was "time pressure[d]" to make the decision to proceed with eleven jurors. While it's true that the decision to continue with eleven jurors or declare a mistrial had to be made during the trial, the court allowed Martinez time to confer with counsel. Nothing in the record suggests that the court limited Martinez's time to confer and Martinez doesn't argue that the court coerced him. After Martinez spoke with his counsel, the court confirmed that Martinez understood that the decision whether to proceed was his alone. Martinez stated that he wanted to proceed with eleven jurors. Martinez did not ask the court for more time or state that he did not have enough time to consider his options. We therefore disagree that Martinez faced coercive time pressure to decide whether to proceed with eleven jurors.

¶ 27     Finally, Martinez says that he was "misadvised as to the sentencing range" and that he "relied on" that advice "when relenting to counsel's pressure to proceed with eleven jurors." But again, other than his own testimony, Martinez presented no evidence that he was misadvised about the sentencing range. And the postconviction court did not credit Martinez's testimony.

¶ 28     In sum, because the record supports the postconviction court's finding that Martinez was not coerced into proceeding with an eleven-person jury, we will not disturb it. *See Dunlap*, 173 P.3d at 1062.

## III.   Disposition

¶ 29     The order is affirmed.

JUDGE LIPINSKY and JUDGE GRAHAM concur.